ANA ALICIA DÍAZ ÁLVAREZ, recurrida, *v.* DEPARTAMENTO DE RE-
CURSOS NATURALES Y AMBIENTALES, peticionario.

*Número:* AT-96-22          *Resuelto:* 26 de enero de 1999

*Jacqueline Novas Debién, Subprocuradora General,* y *Sigfredo Rodríguez Isaac, Procurador General Auxiliar,* abogados del Departamento de Recursos Naturales y Ambientales, peticionario; *Michel Rachid Piñeiro* y *Jorge E. Galva,* de *Látimer, Biaggi, Rachid & Godreau,* abogados de Empresas Terrassa, peticionaria.

El Juez Asociado Señor Hernández Denton emitió la opinión del Tribunal.

El presente caso ha tenido un trámite apelativo confuso como consecuencia de los cambios introducidos en la estructura judicial en Puerto Rico al entrar en vigor la Ley de la Judicatura de Puerto Rico de 1994 (4 L.P.R.A. sec. 22 *et seq.*). Se trata de un recurso de revisión judicial en el cual se impugna la determinación del Departamento de Recursos Naturales y Ambientales de rechazar los argumentos presentados por la Sra. Ana A. Díaz Álvarez en oposición a la renovación del permiso de extracción de arena en las riberas del Río La Plata solicitada por la compañía Empresas Terrassa, Inc. La señora Díaz Álvarez aduce ante nos que la concesión de la renovación es impro-

cedente a la luz del impacto ambiental que la extracción de arena ha ocasionado en el área, y por el hecho de que el Departamento de Recursos Naturales y Ambientales incurrió en varios errores procesales, durante la consideración de la solicitud, que ameritan la revocación de la resolución que, en términos prácticos, autorizó la renovación del permiso. Revocamos.

I

El pleito original se remonta a 1993 cuando Empresas Terrassa, Inc., una entidad que por varios años ha extraído arena en el valle del Río La Plata, solicitó al Departamento de Recursos Naturales y Ambientales la renovación de su permiso de extracción de arena, originalmente concedido en 1988. En esa ocasión, como parte del proceso de renovación del permiso, fueron publicados edictos que notificaban a la ciudadanía de su derecho a comparecer a las vistas públicas que se realizarían.

El 13 de mayo de 1993, la Sra. Ana Alicia Díaz Álvarez, propietaria de una finca ribereña en el valle del Río La Plata en la jurisdicción del municipio de Toa Alta, presentó en el Departamento de Recursos Naturales y Ambientales una solicitud de intervención en oposición a la renovación del permiso. En esencia, alegó que las extracciones de arena, grava y *topsoil*, por parte de Empresas Terrassa, Inc., han resultado en un daño irreversible al sistema natural del río y a la capacidad agrícola del área en donde ubica una finca agrícola de la cual es propietaria. Además, expresó que la situación se dramatiza por el hecho de que el material sustraído no es restituido.

Luego de presentada la solicitud de intervención, fueron realizadas varias vistas ante un Oficial Examinador del Departamento de Recursos Naturales y Ambientales en las que la señora Díaz Álvarez tuvo la oportunidad de compa-

recer y presentar prueba testifical y pericial. Eventualmente, el Oficial Examinador emitió un informe en el cual recomendó que la solicitud de intervención de Díaz Álvarez y los argumentos esbozados por ella en contra de la renovación del permiso de extracción de arena fueran declarados no ha lugar. Posteriormente el Departamento de Recursos Naturales y Ambientales acogió el informe del Oficial Examinador y emitió una resolución en conformidad con la recomendación formulada.

Inconforme con esta determinación, Díaz Álvarez presentó un recurso de revisión judicial ante el extinto Tribunal Superior, Sala de San Juan, el 10 de enero de 1995. En esa ocasión, el recurso fue referido al Hon. Juez Gilberto Gierbolini, Juez del Tribunal de Circuito de Apelaciones, para su adjudicación como juez de instancia.[1]

Luego de varios trámites procesales, el 30 de agosto de 1995, el tribunal revisor emitió sentencia mediante la cual revocó la resolución del Departamento de Recursos Naturales y Ambientales y devolvió el caso a esa agencia administrativa para la continuación de los procedimientos. El archivo en autos de copia de la notificación de la sentencia ocurrió el 19 de septiembre de 1995. Una moción de reconsideración fue acogida por el foro de instancia y denegada el 10 de noviembre de 1995. La notificación de esta determinación ocurrió el 22 de noviembre de 1995.

No conformes con esta determinación, tanto el Departamento de Recursos Naturales y Ambientales como Empresas Terrassa, Inc., acudieron por separado al Tribunal de Circuito de Apelaciones mediante Petición de *certiorari* el

---

[1] Mediante Orden Administrativa del Juez Presidente del Tribunal Supremo de Puerto Rico de 18 de abril de 1995, enmendada el 6 de junio del mismo año, la solicitud de revisión de Díaz Álvarez fue referida al recién creado Tribunal de Circuito de Apelaciones para ser considerado por los jueces de apelaciones, actuando como jueces del Tribunal de Primera Instancia. En cumplimiento de esta orden administrativa, el Juez Administrador de ese foro apelativo distribuyó los casos, recayendo la consideración del presente caso en el Hon. Juez Gilberto Gierbolini.

21 y 22 de diciembre de 1995, respectivamente. Ambos recursos fueron consolidados.

Luego de varios trámites procesales, el Tribunal de Circuito de Apelaciones emitió una resolución mediante la cual ordenó el traslado del recurso a este Tribunal. Resolvió que a la luz de lo dispuesto en la ley de la Judicatura vigente, carecía de competencia para considerar el recurso de *certiorari*. A juicio de ese foro, el recurso de revisión judicial presentado originalmente en el Tribunal Superior debió ser referido ante nos, ya que se trataba de una revisión de una decisión administrativa final de una agencia que la ley expresamente disponía que sería considerada por la Sala de San Juan del Tribunal Superior. Concluyó el Tribunal de Circuito de Apelaciones que como a la fecha de vigencia de la Ley de Judicatura de Puerto Rico de 1994 el recurso aún no había sido resuelto por el Tribunal de Primera Instancia, debió ser referido al Tribunal Supremo de Puerto Rico. Examinemos este planteamiento jurisdiccional.

## II

La Ley de la Judicatura de Puerto Rico de 1994 dispuso que entraría en vigor seis (6) meses después de ser aprobada, salvo los incisos (a) y (b) del Art. 9.004 (4 L.P.R.A. sec. 23f(a) y (b)), los cuales regirían el trámite de los *recursos pendientes* en el Tribunal Superior, *dentro de su jurisdicción apelativa,* al momento de la *aprobación* de la ley. Art. 10.004, Plan de Reorganización Núm. 1[a] de 1994, Parte 3, Leyes de Puerto Rico, pág. 2800. La totalidad de la ley entró finalmente en vigor el *24 de enero de 1995*.

Por lo tanto, la presentación del recurso de revisión judicial por parte de Díaz Álvarez, ocurrida el *10 de enero de 1995*, días antes de la fecha oficial de la vigencia de la totalidad de la Ley de la Judicatura de Puerto Rico 1994,

estaba regida por las disposiciones jurisdiccionales vigentes en ese momento. Al respecto, la Ley Núm. 132 de 25 de junio de 1968, según enmendada, 28 L.P.R.A. sec. 206 *et seq.* —la cual confiere jurisdicción al Secretario del Departamento de Recursos Naturales y Ambientales sobre las actividades de extracción de arena, entre otras cosas— establecía que era el Tribunal Superior, Sala de San Juan, el foro competente para considerar los recursos de revisiones judiciales para impugnar determinaciones emitidas al amparo de la referida ley.[2] Fue conforme al texto de esta ley que Díaz Álvarez acudió al Tribunal Superior Sala de San Juan a cuestionar la determinación del Departamento de Recursos Naturales.

■    Como señalamos, contrario a la mayoría de las disposiciones de la Ley de la Judicatura de Puerto Rico de 1994, los incisos (a) y (b) del Art. 9.004, *supra*, entraron en vigor tan pronto fue aprobada. El primero de estos incisos dispuso como medida transitoria que:

> ... Todo recurso de revisión pendiente ante la consideración del Tribunal Superior sobre decisiones de agencias administrativas, dentro de su jurisdicción apelativa, deberá resolverse dentro del término de seis (6) meses a partir de la *aprobación* de esta ley; disponiéndose, que una vez transcurrido dicho término los asuntos pendientes se referirán para su trámite y resolución al Tribunal Supremo de conformidad con el texto original de este inciso [y] permanecerán en el Tribunal Supremo hasta que sean resueltos finalmente. (Énfasis suplido.) 4 L.P.R.A. sec. 23f(a).[3]

---

[2] Dispone, en parte, el Art. 10 de la Ley Núm. 132 de 25 de junio de 1968 (28 L.P.R.A. sec. 214):

"(b) *Revisión ante el Tribunal Superior*.-La resolución o decisión que emita el Secretario, luego de celebrada la vista pública o sometido el caso, advendrá final y firme a menos que la parte o partes que resulten adversamente afectadas soliciten su revisión para ante el Tribunal Superior de Puerto Rico, Sala de San Juan, dentro de los treinta (30) días siguientes a la fecha de notificación. 28 L.P.R.A. sec. 215(b).

[3] Esta disposición de la Ley de la Judicatura de Puerto Rico de 1994 fue enmendada posteriormente por la Ley Núm. 248 de 25 de diciembre de 1995 (4 L.P.R.A. secs. 22i, 22j, 22k, 22n, 22o, 22p, 23f y 23n).

Ante el claro mandato legislativo, el recurso de revisión judicial presentado por Díaz Álvarez debió ser resuelto por el tribunal de instancia antes de que expiraran los seis (6) meses desde la aprobación de la nueva Ley de la Judicatura de Puerto Rico de 1994. Estos seis (6) meses se cumplieron el 24 de enero de 1995. El recurso, sin embargo, fue resuelto en agosto de 1995, lo que sin duda ocurrió fuera del término que el legislador prescribió para hacerlo. De este modo, el foro con facultad para considerarlo, expirados esos seis (6) meses, lo era este Tribunal. Así, pues, actuó conforme a derecho el Tribunal de Circuito de Apelaciones al referirnos el recurso ante nuestra consideración para su adjudicación final. La sentencia emitida por el Tribunal de Primera Instancia carece, pues, de validez. Compete a este Foro adjudicar el recurso de revisión judicial instado por la señora Díaz Álvarez.

Aclarado el aspecto jurisdiccional, pasemos a la consideración de los méritos del recurso.

## III

En su recurso de revisión, Díaz Álvarez señala la comisión de seis (6) errores.([4]) Éstos cuestionan esencialmente

---

([4]) Los señalamientos de error son los siguientes:

"Primer Error:

"Erró el Honorable Secretario del Departamento de Recursos Naturales y Ambientales, al declarar No Ha Lugar la Intervención en oposición al otorgación del permiso para la extracción de material de la corteza terrestre en el Valle del Toa, a la concesionaria Empresas Terrazas [sic] Inc. [...].

"Segundo Error:

"Erró el Departamento al concluir que [la] parte interventora no probó su caso, pero simultáneamente señala que la intervención y peritaje que aportó esta parte colocó a[l] [...] Departamento en conocimiento y posición de exigirle al concesionario que cumpliere con un sinnúmero de requisitos que nunca se les había exigido al concesionario y que El Departamento reconoció.

"Tercer Error:

"Erró el Departamento al no permitir la urgente necesidad de expresión del Departamento de Agricultura en las vistas Públicas cuando el propio Oficial Examinador con la anuencia del Honorable Secretario había declarado HA lugar su intervención y participación.

"Cuarto Error:

lo siguiente: (1) si erró el Departamento de Recursos Naturales y Ambientales al autorizar la renovación de los permisos de extracción de arena a pesar de la evidencia que se presentó a lo largo del proceso administrativo;[5] (2) si erró el Departamento de Recursos Naturales y Ambientales al igualmente denegar la intervención del Departamento de Agricultura; (3) si erró el Departamento de Recursos Naturales y Ambientales al no requerir una evaluación ambiental, una declaración de impacto ambiental o una declaración de impacto ambiental no significativo en conformidad con la Orden Administrativa Núm. 93–12 de 23 de julio de 1993 del Departamento de Recursos Naturales y Ambientales, como condición para la renovación del permiso de extracción de arena; (4) si erró ese foro administrativo al realizar vistas publicas sin la presencia del defensor del interés público que el propio Departamento de Recursos Naturales y Ambientales había nombrado para ese procedimiento, y (5) si la autorización de la intervención como perito de Empresas Terrassa, Inc., del Sr. Leovigildo Vázquez Iñino contravino la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico.

Luego de evaluar los escritos de las partes, así como el derecho aplicable, estimamos que la consideración de la controversia en torno a la necesidad de elaborar una decla-

---

"Erró el Departamento de Recursos Naturales y Ambientales al no exigir una Declaración de Impacto Ambiental o una Evaluación Ambiental a la peticionaria Empresas Terrazas [sic] Inc. como condición previa al otorgamiento del permiso de extracción considerando la sencibilidad [sic] de la zona aluvial-agrícola y los cambios drásticos en el proceso de extracción introducidos por dicha empresa a través de los años.

"Quinto error:

"Erró el Departamento al permitir que se procediera la vista sin la presencia del representante del Interés Público quien ya había sido designado por el honorable Secretario para entender en el caso, y representar al interés público por revestir el mismo un gran interés para el Pueblo de Puerto Rico.

"Sexto Error:

"Erró el Departamento [a]l permitir la improcedente intervención del Sr. Leovigildo Vázquez Iñino, como perito geólogo de la Parte Peticionaria en claro detrimento a la Parta Interventora y en abierta contravención a la Ley de ética Gubernamental."

[5] Los señalamientos de error uno (1) y dos (2) de la peticionaria pueden resumirse en esta única controversia.

ración de impacto ambiental dispone del recurso ante nos.([6]) Así, pues, es preciso examinar si, como cuestión de

---

([6]) Los demás señalamientos de error de naturaleza procesal son inmeritorios.

En el tercer señalamiento de error, la señora Díaz Álvarez alega que el Departamento de Recursos Naturales erró al denegar la intervención del Departamento de Agricultura en el procedimiento administrativo. Como puede apreciarse, Díaz Álvarez formula un planteamiento que le correspondía hacer al Departamento de Agricultura que fue la entidad afectada por la determinación administrativa y, por lo tanto, es la entidad con legitimación activa para cuestionar esa decisión.

Por otro lado, en el señalamiento de error número cinco (5) Díaz Álvarez alega que erró el Departamento de Recursos Naturales y Ambientales al permitir la continuación de los procedimientos sin la presencia de un representante del interés público nombrado por el Secretario de esa agencia. Aduce la peticionaria que de conformidad con la Sec. 3.3 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2153, el Secretario del Departamento de Recursos Naturales había designado al Lcdo. Francisco J. De Jesús Annoni como representante del interés público. Por ello, entiende que la consideración de la solicitud de la renovación del permiso no podía realizarse sin la intervención de éste.

Hemos evaluado con detenimiento los autos del caso. De ellos surge que mediante moción presentada el 24 de septiembre de 1993 ante el Departamento de Recursos Naturales y Ambientales, dicha agencia, a través del señor De Jesús Annoni, expresó su posición de que no era necesaria la participación de un representante del interés público. Alegó que ello resultaba oneroso para la agencia debido a la carga de trabajo existente; la necesidad de propiciar soluciones rápidas, justas y económicas; que en el caso de autos las partes pueden representar adecuadamente sus intereses sin que sea necesario la intervención de un representante del interés público, y la ausencia de razones apremiantes que justifiquen la necesidad de un representante del interés público. Ante todo lo anterior, el Departamento destacó que la única función suya debe ser la de proveerles un foro especializado en el que puedan dilucidar sus controversias y el Departamento servirles de árbitro.

Ante estos hechos, nos parece que no erró el oficial examinador y el Departamento de Recursos Naturales y Ambientales al continuar el procedimiento sin la presencia de un representante del interés público.

En cuanto al sexto señalamiento de error, la peticionaria argumenta que era improcedente la participación de Leovigildo Vázquez Iñino como perito de Empresas Terrassa, Inc. toda vez que éste fungió como funcionario del Departamento de Recursos Naturales y Ambientales en la División de Permisos hasta el 1992. En este sentido, alega que su participación como perito violó el Art. 3.7(c) de la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico, Ley Núm. 12 de 24 de julio de 1985 (3 L.P.R.A. sec. 1827(c)), la cual dispone:

"... Ningún ex servidor público ... podrá, durante el año siguiente a la fecha de terminación de su empleo, ofrecer información, asesorar o representar en cualquier capacidad a persona alguna ante la agencia ... para la cual el ex servidor público trabajó, respecto a aquellos casos o asuntos con los cuales el ex servidor hubiere tenido que ver directa o indirectamente mientras fue funcionario o empleado público."

Notamos que está en controversia la fecha exacta en que el señor Vázquez dejó de laborar para el Departamento de Recursos Naturales y Ambientales. Mientras Díaz Álvarez alega que se retiró en 1992, Empresas Terrassa, Inc. sostiene que tal retiro ocurrió en 1991. Sin embargo, al examinar los argumentos de la peticionaria Díaz Álvarez, notamos que éstos sólo se circunscriben a ser una mera alegación general sin especificar cómo se configuró la violación de la Ley de Ética Guberna-

derecho, el Departamento de Recursos Naturales y Ambientales erró al no requerirle a Empresas Terrassa, Inc. la elaboración de una declaración de impacto ambiental como condición para la renovación del permiso de extracción de arena.

## IV

■ A. La Ley Orgánica del Departamento de Recursos Naturales, Ley Núm. 23 de 20 de junio de 1972, según enmendada, 3 L.P.R.A. sec. 151 *et seq.*, confiere a esta agencia la jurisdicción para regular y fiscalizar las actividades de extracción de materiales de la corteza terrestre que previamente ostentaba el Departamento de Transportación y Obras Públicas. 3 L.P.R.A. sec. 156(c). No obstante, es la Ley de Arena, Grava y Piedra, Ley Núm. 132, según enmendada, *supra*, el estatuto que delimita el alcance de esa jurisdicción. Al respecto, confiere jurisdicción al Secretario del Departamento de Recursos Naturales y Ambientales sobre:

> ... las actividades de extracción, excavación, remoción y dragado de los componentes de la corteza terrestre llamados arena, grava, piedra, tierra, sílice, calcita, arcilla y cualquier otro componente similar de la corteza terrestre, que no esté reglamentado como mineral económico en terrenos públicos y privados. 28 L.P.R.A. sec. 206.

El Art. 2 (28 L.P.R.A. sec. 207) de la referida ley, por su parte, establece que para excavar, extraer, remover o dragar de los componentes de la corteza terrestre dentro de los límites geográficos del Estado Libre Asociado, se requerirá un permiso expedido por el Secretario del Departamento de Recursos Naturales. La Ley, además, reconoce el derecho de la ciudadanía a participar e intervenir en los procedimientos administrativos relacionados con la otorgación o

---

mental del Estado Libre Asociado de Puerto Rico a la luz del texto precitado. Ante lo anterior, no nos hallamos en condiciones para adjudicar el alegado error.

renovación de permisos de extracción de arena. Con ese fin, dispone que "[e]l Secretario celebrará vistas públicas de naturaleza cuasi judicial si surgieran controversias u objeciones en torno a alguna solicitud y podrá convocar éstas motu proprio o a requerimiento de parte interesada". 3 L.P.R.A. sec. 208.

Finalmente, el Art. 11 de dicha ley, advierte que las determinaciones de hecho de los procedimientos "serán concluyentes si están sostenidas por evidencia sustancial". 28 L.P.R.A. sec. 215. Nada dice en torno a las conclusiones de derecho, por lo que conforme a la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, serán revisadas en todos sus aspectos.

■    En conformidad con estas disposiciones de ley, el Departamento de Recursos Naturales y Ambientales promulgó el Reglamento para Regir la Extracción de Materiales de la Corteza Terrestre Núm. 2305, Departamento de Recursos Naturales de 4 de noviembre de 1977, el cual detalla el procedimiento para la otorgación y renovación de los permisos de extracción de este tipo de materiales. Este reglamento, además, establece los procedimientos administrativos que debe seguir toda persona interesada en intervenir en un procedimiento en el que se considera una solicitud de un permiso de extracción de corteza terrestre o su renovación.(7)

B.   En el caso de autos, la controversia en torno a la necesidad de elaborar una declaración de impacto ambiental como prerrequisito para obtener la renovación del per-

---

(7) La Sec. 8.2 de este Reglamento dispone, en parte:

"Toda persona natural o jurídica que desee comparecer y ser oída en relación a una solicitud de expedición de un nuevo permiso, y/o de la renovación de uno vigente, deberá radicar ante el Departamento un escrito debidamente jurado en el cual aparezcan los siguientes datos:

" '(a) Nombre y dirección de la persona que desea comparecer y ser oída y de su abogado, si lo tuviese

" '(b) hecho en que funda su derecho a ser oída....' " Reglamento para Regir la Extracción de Materiales de la Corteza Terrestre, Núm. 2305, Departamento de Recursos Naturales, 4 de noviembre de 1977.

miso de extracción de arena, se enmarca en la Orden Administrativa Núm. 93–12, *supra*, promulgada por el Secretario del Departamento de Recursos Naturales y Ambientales. Mediante dicha orden el Departamento de Recursos Naturales y Ambientales requirió la preparación de una evaluación de impacto ambiental o una declaración de impacto ambiental en los casos de impacto ambiental significativo, o una declaración de impacto ambiental no significativo como condición para la otorgación de un permiso de extracción de materiales de la corteza terrestre.

Esta Orden Administrativa dispuso lo siguiente:

> El Artículo 4(c) de la Ley Número 9 del 18 de junio de 1970 exige el estricto cumplimiento con sus disposiciones, —"antes de efectuar cualquier acción o promulgar cualquier decisión gubernamental que afecte significativamente la calidad del ambiente ...". El acto de otorgar un permiso gubernamental es una acción o decisión que pudiera requerir una Declaración de Impacto Ambiental (DIA), si se considera que pudiera afectar significativamente el ambiente.
>
> A estos efectos, el otorgar permisos de extracción de materiales de la corteza terrestre es una actividad originada por este Departamento. Por esta razón, se deberá cumplir con el Artículo 4(c) realizando una Evaluación de Impacto Ambiental (EA) y preparando un[a] DIA cuando el impacto sea significativo o una DIA Negativa (Determinación de Impacto Ambiental No Significativo), cuando no lo sea, como una condición previa al otorgamiento del permiso. La DIA negativa se radicará en la Junta de Calidad Ambiental conjuntamente con la evaluación ambiental que justificó dicha acción. La DIA Preliminar se deberá circular a la Junta de Calidad Ambiental y aquellas agencias inherentes a la acción propuesta.
>
> [Firmado] Pedro A. Gelabert
> Secretario
> Orden Administrativa Núm. 93–12, *supra.*

De este modo, conforme a la referida orden administrativa, toda persona que solicite un permiso de extracción de arena deberá preparar una evaluación ambiental y, a la luz del contenido de esa evaluación, deberá preparar una declaración ambiental o una determinación de impacto ambiental no significativo, según sea el caso.

La señora Díaz Álvarez expresa que a la luz de este esquema, Empresas Terrassa, Inc. debía cumplir con el requisito de elaborar una declaración de impacto ambiental o una declaración de impacto ambiental no significativo.

Contrario a esta pretensión, Empresas Terrassa, Inc. aduce que la preparación de la declaración de impacto ambiental era innecesaria. Añade que la referida orden administrativa fue aprobada en 1993 y que aplica sólo a procedimientos en los cuales serán concedidos permisos de extracción y no en procedimientos de renovación.

C. Nuestra lectura de la precitada orden administrativa nos convence de que la peticionaria Díaz Álvarez tiene razón. No hay duda de que la intención de la Orden fue poner en vigor las disposiciones de la Ley sobre Política Pública Ambiental al máximo grado posible en las actividades de extracción de corteza terrestre. El hecho de que la solicitud de Empresas Terrassa, Inc. sea una renovación de un permiso previamente otorgado no la exime del alcance de la Orden Administrativa.

En primer lugar, los términos claros de la Orden Administrativa revelan que el criterio que sirve de fundamento para promulgarla es la posibilidad de que la actividad autorizada por el Departamento de Recursos Naturales y Ambientales en relación con la extracción de corteza terrestre pudiera afectar significativamente el ambiente. No hay duda de que a la luz de la evidencia pericial presentada y de las propias determinaciones de hecho del oficial examinador, la renovación del permiso de extracción de arena en el caso de autos pudiera afectar significativamente el ambiente. Por ello, el hecho de que el procedimiento sea para la renovación de un permiso y no para su concesión original es impertinente.

En segundo lugar, la Orden Administrativa fue promulgada en 1993. Por su parte, el permiso de extracción de Empresas Terrassa fue originalmente expedido en 1988, previo a la vigencia de esta Orden, por lo que en ese mo-

mento la parte promovida no tuvo que elaborar una declaración de impacto ambiental. Siendo ello así, la exigencia de que cumpla con las disposiciones de la Orden Administrativa Núm. 93–12, *supra*, para dar pleno cumplimiento a la política pública en torno al ambiente cobra mayor significado.

En tercer lugar, el efecto acumulativo de la extracción de corteza terrestre por varios años, luego de la concesión de un permiso original, pudiera alterar significativamente las condiciones ambientales de un área, por lo que una determinación de que no hay un efecto ambiental significativo al momento de solicitar el permiso original pudiera alterarse dramáticamente al momento de solicitar su renovación. Ello nos convence de que la Orden Administrativa Núm. 93–12, *supra*, tiene el mismo alcance al momento de evaluar una solicitud de otorgación de un permiso de extracción como al momento de evaluar una solicitud de renovación.

Por último, la Orden Administrativa del Departamento de Recursos Naturales y Ambientales acoge el claro mandato de la Ley sobre Política Pública Ambiental, Ley Núm. 9 de 18 de junio de 1970, según enmendada, 12 L.P.R.A. sec. 1121 *et seq.*, que obliga a los departamentos, agencias, corporaciones públicas, municipios e instrumentalidades del Estado Libre Asociado y sus subdivisiones políticas, a que incluyan con toda propuesta de legislación y antes de efectuar cualquier acción o promulgar cualquier decisión gubernamental que afecte significativamente la calidad del medio ambiente, una declaración escrita y detallada sobre el impacto ambiental de la legislación o acción propuesta. Esta declaración de impacto ambiental deberá cumplir con los criterios del propio estatuto, Art. 4(c), 12 L.P.R.A. sec. 1124(c), y con lo dispuesto en el Reglamento sobre Declaración de Impacto Ambiental de Puerto Rico, Núm. 3106, Junta de Calidad Ambiental, 4 de junio de 1984, y en el Manual para la preparación, la evaluación y el uso de las

declaraciones de impacto ambiental, Junta de Calidad Ambiental, 19 de diciembre de 1972. Véase *Misión Ind. P.R. v. J.C.A.*, 145 D.P.R. 908 (1998).

■ Asimismo, la Orden Administrativa Núm. 93–12, *supra*, es consecuente con el Art. 3 de la Ley Orgánica del Departamento de Recursos Naturales, 3 L.P.R.A. sec. 153, que impone a dicha agencia la obligación de implantar la fase operacional de la política pública en torno al ambiente contenida en la Sec. 19 del Art. VI de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1,([8]) y en la Ley sobre Política Pública Ambiental. 3 L.P.R.A. sec. 153. De este modo, aún en ausencia de una orden administrativa del Departamento de Recursos Naturales y Ambientales que ordene la confección de la declaración de impacto ambiental, la Ley sobre Política Pública Ambiental y la reglamentación precitada, imponen esa obligación sobre el Departamento de Recursos Naturales y Ambientales. A la luz de lo anterior, estimamos que antes de conceder un permiso de extracción de corteza terrestre o renovarlo, el Departamento de Recursos Naturales y Ambientales está obligado a dar cumplimiento a la política pública ambiental recogida en el Art. 4(c) de la Ley sobre Política Pública Ambiental, *supra*, que, a su vez, fue reconocida en la Orden Administrativa Núm. 93–12, *supra*, de dicha agencia.

En el presente caso, los autos revelan que Empresas Terrassa realizó una evaluación ambiental. Ésta fue elaborada luego de que el Departamento de Recursos Naturales y Ambientales emitiera la resolución que es objeto de revisión. Por lo tanto, esa agencia no contó con el beneficio

---

([8]) Dispone la Sec. 19 del Art. VI de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, ed. 1982, pág. 379, que "[s]erá política pública del Estado Libre Asociado la más eficaz conservación de sus recursos naturales, así como el mayor desarrollo y aprovechamiento de los mismos para el beneficio general de la comunidad ...".

de la información contenida en la evaluación ambiental antes de conceder el permiso de extracción. Como esta decisión es contraria al ordenamiento vigente, procede que la revoquemos.

Se devolverá el caso al Departamento de Recursos Naturales y Ambientales para que cumpla con lo dispuesto en la Orden Administrativa Núm. 93–12, *supra*, y realice las vistas públicas que en derecho procedan.

*Se emitirá la sentencia correspondiente.*