EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Hon. Jaime L. Castro Gracia: <br> Hon. Carlos Cabán Nieves <br>     Demandantes-Peticionarios <br><br>         v. <br><br> Departamento de Justicia de P.R. y <br> José Fuentes Agostini <br>     Demandados-Recurridos | Certiorari <br><br> 2001 TSPR 9 |

Número del Caso: CC-1999-705

Fecha: 23/enero/2001

Tribunal de Circuito de Apelaciones:

                Circuito Regional IV

Juez Ponente:

                Hon. Roberto L. Córdova Arone

Abogado de la Parte Peticionaria:

                Lcdo. Carlos L. Lorenzo

Oficina del Procurador General:

                Lcdo. Héctor Clemente Delgado <br>                 Lcda. Rose Mary Corchado Lorent

Materia: Denegatoria a los Beneficios del 32 L.P.R.A. 3085
       Representación Legal

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

Hon. Jaime L. Castro Gracia;
Hon. Carlos Cabán Nieves

     Demandantes-Peticionarios
     Recurrentes

                         CC-1999-705        Certiorari

       vs.

Departamento de Justicia de
P.R. y José Fuentes Agostini

     Demandados-Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor FUSTER BERLINGERI


San Juan, Puerto Rico, a 23 de enero de 2001.


Nos toca dilucidar cómo debe aplicarse la Ley Núm. 9 de 26 de noviembre de 1975, 32 L.P.R.A. 3085, en casos en que asambleístas municipales ejercen su voto con respecto a ordenanzas ante su consideración.


I

El 4 de mayo de 1998, la Asamblea Municipal de Aguada aprobó la Ordenanza Núm. 31, serie 1997-98, para reglamentar la extracción de arena en el Municipio de Aguada.[1]

---

[1] La Asamblea Municipal había aprobado el 6 de abril de 1998 la Ordenanza Núm. 29, serie 1997-98, idéntica a la Ordenanza Núm. 31, pero fue vetada por el alcalde (Ap. Pág.23). La Ordenanza Núm. 31 fue aprobada por 2/3 parte de los miembros de la Asamblea, por lo cual no era necesaria la aprobación del alcalde. Art. 5.008(e) de la Ley de Municipios Autónomos. 21 L.P.R.A. sec. 4207.

Mediante esta ordenanza se decretó, entre otros extremos, lo siguiente:

"Que cualquier proponente de un permiso de extracción de arena, dentro de la extensión territorial del municipio de Aguada, vendrá obligado a:

a.  Realizar una Declaración de Impacto Ambiental, según el Artículo 4(c) de la Ley 9 del 18 de junio de 1970, conocida como "Ley de Política Pública Ambiental".

b.  Comparecer ante la Comisión de Salud, Calidad Ambiental y Beneficencia de la Asamblea Municipal[,] presentar su propuesta, proyecto, planes y propósitos dirigidos a realizar extracción de arena en el territorio de Aguada.

c.  Obtener un endoso a manera de resolución de la Asamblea Municipal y aprobado por el Alcalde de Aguada.

d.  Obtener una Patente Municipal y pagar los arbitrios correspondientes a la realización de la actividad comercial en el Municipio de acuerdo a las disposiciones y estatutos de ley aplicables, según disponga el reglamento municipal correspondiente.

e.  Procurar y presentar una fianza emitida por una Compañía de Seguros reconocida por la suma de un millón ($1,000,000) de dólares, para cubrir cualquier daño que sufra la infraestructura municipal por el paso de camiones y vehículos pesados durante la vigencia del permiso otorgado. Esta póliza de seguro se hará a nombre del Municipio de Aguada, Puerto Rico."

Al ocurrir los hechos de este caso, la empresa Cordeco Northwest Corp. ("Cordeco") era dueña de ciertos terrenos ubicados en Aguada. Por razón de la Ordenanza referida, presentó una demanda ante el Tribunal Federal para el Distrito de Puerto Rico contra los peticionarios en su

capacidad tanto individual como representativa, por la alegada violación de derechos civiles. Cordeco alegó que debido a la aprobación de la Ordenanza Núm. 31, se había visto impedida de extraer arena en el Municipio de Aguada, a pesar de tener los permisos que para tales fines había expedido el Departamento de Recursos Naturales y Ambientales. Adujo que la Asamblea Municipal de Aguada carecía de facultad legal para aprobar reglamentación aplicable al negocio de extracción de arena, debido a que tal facultad le correspondía al Departamento de Recursos Naturales y Ambientales.

Encarados con la acción referida, los peticionarios –miembros de la Asamblea Municipal de Aguada– solicitaron al Secretario de Justicia que les concediese los beneficios de representación legal en cuanto a las acciones presentadas contra ellos **en su carácter personal**. En cuanto a las acciones presentadas en su carácter oficial, los peticionarios le informaron al Secretario de Justicia que la Asamblea Municipal había asumido su representación legal.

El Secretario de Justicia denegó la solicitud de los asambleístas. Determinó que los peticionarios actuaron fuera del marco de sus funciones, debido a que, en su criterio, la Asamblea Municipal no tenía autoridad legal para reglamentar el negocio de extracción de arena. Los peticionarios acudieron entonces ante el Tribunal de Circuito de Apelaciones para impugnar la decisión adversa del Secretario de Justicia, pero dicho foro denegó el recurso de revisión.

Inconformes con esta determinación, los peticionarios acudieron ante nos y, en lo pertinente, plantearon la siguiente cuestión:

> El Honorable Tribunal de Circuito de Apelaciones erró al determinar que los peticionarios actuaron fuera del marco de sus funciones.

El 5 de noviembre de 1999, decidimos revisar la referida sentencia del foro apelativo, dictada el 16 de agosto de 1999, por lo cual expedimos el recurso de certiorari solicitado por los asambleístas del Municipio de Aguada. Luego de procurar y obtener una prórroga, los peticionarios presentaron su alegato el 15 de julio de 2000; y el Procurador General compareció el 10 de agosto de 2000 y nos pidió que aceptáramos un escrito previo suyo como su

alegato, a lo cual accedimos el 15 de septiembre de 2000. Con el beneficio de los criterios de ambas partes, pasamos a resolver.

II

La Ley Núm. 9 de 26 de noviembre de 1975 (Ley Núm. 9), que enmendó la Ley Núm. 104 de 29 de junio de 1955 (Ley Núm. 104), establece que un funcionario o empleado del Estado Libre Asociado de Puerto Rico ("E.L.A."), que sea demandado en daños y perjuicios en su carácter **personal** por actos u omisiones incurridos dentro del marco de sus funciones que constituyan violaciones a los derechos civiles de los

demandantes y que no tenga disponibles los beneficios de la Ley Núm. 104, **puede solicitar que el Estado le provea representación legal** y pague la sentencia que en su día pueda recaer, Artículo 12 de la Ley Núm. 104, según enmendado por la Sección 7 de la Ley Núm. 9, 32 L.P.R.A. sec. 3085.

El "Reglamento Sobre Representación Legal y Pago de Sentencia bajo la Ley de Reclamaciones y Demandas contra el Estado", Reglamento Núm. 4071, aprobado el 8 de septiembre de 1989, fija los procedimientos que regirán la concesión de los beneficios de representación legal y pago de sentencia que proveen las leyes Núm. 9 y Núm. 104, supra.

El Artículo VII del Reglamento referido establece que el Secretario de Justicia o la persona designada por éste evaluará la solicitud a los efectos de determinar si el solicitante es elegible para que se le concedan los referidos beneficios. En este caso, el Secretario de Justicia determinó que los peticionarios no eran elegibles para los beneficios solicitados, por entender que éstos actuaron fuera del marco de sus funciones. El foro apelativo ratificó esta decisión. Por ende, nos toca resolver si en efecto, **para los fines de la Ley Núm. 9 referida**, los peticionarios actuaron fuera del marco de sus funciones como para que se le negara el beneficio de representación legal con respecto a la acción que se trajo en su contra en su carácter personal.

En Felicita García v. E.L.A., res. el 13 de octubre de 1998, 146 D.P.R. ___, 98 T.S.P.R. 131, 98 JTS 133, en la pág. 148, nota al calce Núm. 9, expresamos lo siguiente:

> Se debe señalar que uno de los propósitos seguidos por el legislador al promulgar la Ley Núm. 9 fue el proteger a los funcionarios o empleados públicos que son demandados en el foro federal en su capacidad personal. Por ejemplo, esta situación ocurre cuando los funcionarios o empleados públicos actúan so color de autoridad estatal y violan los derechos civiles de una o varias personas. Véase 42 U.S.C.A. sec. 1983. En este caso, la Enmienda XI de la Constitución de los Estados Unidos prohibe que se demande a un estado en los tribunales federales. Se ha resuelto que esta protección constitucional se extiende al Estado Libre Asociado de Puerto Rico. Font v. Dapena Yordan, 763 F. Supp. 680 (1991). Aparte de esto, en la definición de lo que es una "persona" para efecto de la Sec. 1983 no se incluyen los estados, territorios ni el E.L.A. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1988); Sheldon H. Nahmod, Civil Rights and Civil Liberties Litigation: The Law of Section 1983, sec. 1.06, págs. 13-14. Si la Ley Núm. 9 no existiera, los funcionarios o empleados públicos estarían desprovistos de toda protección cuando son

demandados en los foros federales por actuaciones dentro del marco de sus funciones oficiales.

En la Exposición de Motivos de la Ley Núm. 9 se expresa lo siguiente:

[Las] demandas, en ocasiones, pueden radicarse [sic] no solamente contra instrumentalidades del Gobierno  sino también contra funcionarios gubernamentales en su carácter personal, aun cuando las acciones motivo de la demanda se lleven a cabo en el estricto y legal cumplimiento de las obligaciones que le imponen las leyes que tiene la obligación de administrar. El Estado Libre Asociado de Puerto Rico reconoce que es de su obligación el asumir cualquier responsabilidad de carácter económico con motivo de indemnizaciones impuestas por un tribunal con jurisdicción a cualquier funcionario o empleado público cuando esto ocurra como consecuencia de una acción administrativa tomada de buena fe, dentro de las disposiciones legales vigentes y dentro del marco de sus funciones.

....

...Con la adopción de esta medida se sume una responsabilidad ineludible para la protección de la integridad del servicio público.

El Artículo 12 de la Ley Núm. 104, establece los requisitos para que un funcionario sea elegible para obtener los beneficios de representación legal y, posteriormente, el pago de sentencia:

(a)    que sea demandado en daños y perjuicios en su carácter personal;

(b)    que la causa de acción se fundamente en alegadas violaciones a los derechos civiles del demandante debido a actos u omisiones incurridos de buena fe, en el curso de su trabajo y dentro del marco de sus funciones.

El Artículo V del Reglamento Núm. 4071, añade los siguientes requisitos:

(1) los hechos que dan lugar a la demanda no constituyan delito; (2) no constituyan negligencia inexcusable, y; (3) no sean contrarios a un estado de derecho establecido jurisprudencialmente mediante sentencia final y firme.

El solicitante debe cumplir con cada uno de los requisitos mencionados. En este caso, como hemos señalado, la condición en controversia es si los funcionarios actuaron dentro del marco de sus funciones.

No cabe duda que el Departamento de Recursos Naturales y Ambientales es la agencia con jurisdicción para regular y fiscalizar las actividades de extracción de materiales de la corteza terrestre. La "Ley de Arena, Piedra y Grava", Ley Núm. 132 de 25 de junio de 1968, según enmendada, 28 L.P.R.A.

secs. 206 et seq., delimita el alcance de esa jurisdicción. El Departamento de Recursos Naturales promulgó el "Reglamento para Regir la Extracción de Materiales de la Corteza Terrestre", Reglamento Núm. 2305, del 10 de octubre de 1977, el cual detalla los procedimientos para la otorgación y renovación de los permisos de extracción de este tipo de materiales. Véase Díaz v. Depto. Rec. Nat., op. y sentencia del 26 de enero de 1999, 147 D.P.R. ___, 99 T.S.P.R. 7, 99 JTS 6.

Debido a que el Departamento de Recursos Naturales es la agencia con jurisdicción para reglamentar la extracción de arena, y a que esta competencia no parece haber sido transferida al Municipio de Aguada conforme al Artículo 14.003 de la Ley de Municipios Autónomos, Ley Núm. 81 de 30 de agosto de 1991, 21 L.P.R.A. sec. 4653, podría ser que la Ordenanza Núm. 31, serie 1997-98, sea susceptible de ser declarada nula judicialmente.[2]

Sin embargo, lo anterior no resuelve la controversia de este caso. Los peticionarios argumentan que independiente- mente de que la referida ordenanza fuese válida o no, la función fundamental de un asambleísta es "votar" sobre toda medida que se presente ante el cuerpo legislativo al cual pertenece. Por lo tanto, sostienen que no se puede concluir que un asambleísta municipal actúa fuera de sus funciones al emitir su voto para aprobar una ordenanza, aunque la ordenanza en sí pueda ser anulable.

Consideramos que los peticionarios tienen razón. Lo determinante en este caso no es la validez o invalidez de la referida Ordenanza, sino si los peticionarios desempeñaron una de las responsabilidades esenciales de su cargo al emitir su voto con respecto a un proyecto ante su consideración. No puede haber duda de que la acción de votar a favor o en contra de una medida ante la consideración de la Asamblea Municipal es una de las funciones fundamentales del asambleísta. Véanse Artículos 5.004, 5.005, 5.006 y 5.007 de la Ley Núm. 81, supra, 21 L.P.R.A. secs. 4204-4207. No debe confundirse

_____

[2] No pasamos juicio sobre este asunto, por no ser ello necesario para adjudicar la controversia concreta que se ha presentado ante nos. No resolvemos tampoco si los municipios pueden aprobar ordenanzas que resulten complementarias a la Ley de Arena, Piedra y Grava, Ley Núm. 132 de 25 de junio de 1968, según enmendada, 28 L.P.R.A. sec. 206 et seq.; ni pasamos juicio sobre

la responsabilidad del asambleísta de votar a favor o en contra de una medida, con la legalidad en sí de la medida. Aunque los asambleístas, al igual que los legisladores, deben pasar juicio razonable sobre la validez jurídica de lo que se les propone, su derecho como representantes electos del pueblo a votar con respecto a las medidas que se traen ante su consideración no puede estar sujeto a que al emitir tales votos tengan certeza legal sobre la validez de las medidas en cuestión. Exigir tan difícil condición tendría un efecto congelante ("chilling effect") sobre la función legislativa, que devastaría la democracia representativa, sobre todo con respecto de aquellos representantes del pueblo que no son expertos en asuntos constitucionales. Dicho de otra forma, el fundamental derecho del asambleísta o el legislador a emitir su voto sobre una medida, en representación de quien lo eligió, incluye la posibilidad de equivocarse de buena fe. Por ello, no puede ser que cada vez que su error se compruebe judicialmente, se decida necesariamente también que el asambleísta o legislador actúo fuera del marco de sus funciones.

Es por lo anterior que el Artículo 5.004 de la Ley de Municipios Autónomos, supra, establece que "[l]os asambleístas gozarán de inmunidad parlamentaria por sus votos y expresiones en las sesiones ordinarias o extraordinarios de la [Asamblea] o en cualquier reunión de las comisiones de ésta debidamente celebrada."

El Tribunal de Circuito de Apelaciones no consideró el efecto sobre la controversia del caso de autos del Art. 5004 referido porque los peticionarios supuestamente se limitaron a señalarlo, sin discutirlo. Sin embargo, es una norma reiterada que "[e]n aras de impartir justicia un tribunal apelativo tiene la facultad inherente para considerar y resolver errores patentes que surjan de un recurso aun cuando los mismos no hayan sido levantados por las partes." Hernández v. Espinosa, op. y sentencia del 3 de abril de 1998, 145 D.P.R. ___, 98 T.S.P.R. 40, 98 JTS 41; López Vicil v. I.T.T. Intermedia, res. el 4 de abril de 1997, 142 D.P.R. ___, 97 JTS 42; Ríos Quiñones v. Adm. Servs. Agrícolas, res. el 20 de mayo de 1996, 140 D.P.R. ___, 96 JTS 71; Rodríguez Cruz v. Padilla, 125 D.P.R. 486 (1990); Ab Intestato Marini

---

cuál es la naturaleza de la ordenanza aprobada por el Municipio de Aguada, que está en cuestión aquí.

Pabón, 107 D.P.R. 433; <u>Dávila v. Valdejuly</u>, 84 D.P.R. 101 (1961). El Tribunal de Circuito de Apelaciones debió haber considerado el alcance y efecto del referido Art. 5004. De haberlo hecho, hubiese comprobado la intención legislativa de eximir de responsabilidad a los asambleístas municipales por errores en casos como el de autos, lo que evidentemente le daría apoyo y respaldo a la noción de que debía extendérsele a estos asambleistas el beneficio de la Ley Núm. 9 referida, para darle así eficacia a su inmunidad parlamentaria. Quizás entonces no hubiese errado al resolver que los asambleístas en el caso de autos actuaron fuera del marco de sus funciones al cumplir con el deber y el derecho que tenían de votar en torno a la ordenanza en cuestión.

Erró el foro apelativo. Los asambleístas actuaron aquí dentro del marco de sus funciones, por lo que eran elegibles para recibir los beneficios de la Ley Núm. 9.


                                   III

Los peticionarios aceptaron una oferta de transacción en el pleito en su contra que Cordeco presentó en el tribunal federal. Aceptaron dicha transacción alegadamente por la carga económica que representó tener que litigar en dicho foro sin la ayuda del Estado. Dichos peticionarios, con un gran sentido de responsabilidad nos informaron sobre la transacción referida, y nos alertaron sobre la posibilidad de que su recurso ante nos se hubiese tornado académico.

El Procurador General entonces compareció ante nos "en oposición a la academicidad del recurso". Nos indicó que la transacción referida no se extendía a las consecuencias colaterales del pleito federal. Señaló, con razón, que quedaba por decidirse si el Estado estaba obligado a **reembolsarle** a los peticionarios los honorarios de abogados y las costas en que incurrieron por razón de la referida litigación federal antes de ser transigido el pleito.

Tiene razón el Procurador General. El caso ante nos no se ha tornado académico, porque existen consecuencias colaterales por atender. <u>Noriega Rodríguez v. Hernández Colón</u>, 135 D.P.R. 406 (1994); <u>El Vocero v. Junta de Planificación</u>, 121 D.P.R. 115 (1988).

IV

Por los fundamentos expuestos, se dicta sentencia y se revoca el dictamen del foro apelativo en el caso de autos. Además, se le ordena al Secretario de Justicia a reembolsarle a los peticionarios los gastos, costas y honorarios de abogado que razonablemente hayan incurrido para defenderse en el Tribunal Federal de la acción en su contra **en carácter personal** presentada por Cordeco; y los incurridos en la tramitación del recurso ante nos.[3]

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

---

[3] Debe quedar claro que no pasamos juicio sobre la transacción que los peticionarios aceptaron en el pleito federal en cuestión, alegadamente por no contar con una representación legal costeada por el Estado. Dependiendo de las circunstancias y naturaleza de tal transacción, que no está ante nos en este caso, podría resultar que el Estado tuviese que reembolsar a los peticionarios algo más que lo que hemos ordenado que se les reembolse con arreglo a la estricta cuestión que hemos atendido aquí.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Hon. Jaime L. Castro Gracia;
Hon. Carlos Cabán Nieves

    Demandantes-Peticionarios
    Recurrentes

                               CC-1999-705          Certiorari

        vs.

Departamento de Justicia de
P.R. y José Fuentes Agostini

    Demandados-Recurridos

SENTENCIA


San Juan, Puerto Rico, a 23 de enero de 2001.


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente sentencia, se revoca el dictamen del Tribunal de Circuito de Apelaciones, Circuito Regional IV de Aguadilla-Mayagüez, en el caso de autos.

Además, se le ordena al Secretario de Justicia a reembolsarle a los peticionarios los gastos, costas y honorarios de abogado que razonablemente hayan incurrido para defenderse en el Tribunal Federal de la acción en su contra **en carácter personal** presentada por Cordeco Northwest Corporation; y los incurridos en la tramitación del recurso ante nos.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribuna Supremo. El Juez Asociado señor Rivera Pérez concurre sin opinión. El Juez Presidente señor Andréu García y el Juez Asociado señor Rebollo López no intervinieron.


                                Isabel Llompart Zeno
                                  Secretaria del Tribunal Supremo