EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Hilda Ortiz Feliciano, et al.<br><br>    Recurridos<br><br>        v.<br><br>Estado Libre Asociado de Puerto Rico, Et al.<br><br>    Peticionarios | Certiorari<br><br>2002 TSPR 118<br><br>157 DPR \_\_\_\_ |

Número del Caso: CC-2000-430

Fecha: 12 de septiembre de 2002

Tribunal de Circuito de Apelaciones:
              Circuito Regional IV

Juez Ponente:
              Hon. Jorge L. Escribano Medina

Oficina del Procurador General:

              Lcda. Lizette Mejías Avilés
              Procuradora General Auxiliar

              Lcdo. Salvador Antonetti Stutts
              Departamento de Justicia

Abogado de la Parte Recurrida:

              Lcdo. Santiago Marí Roca

Materia: Violación de Derechos Civiles

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Hilda Ortiz Feliciano,
et al.

    Recurridos

       v.                                CC-2000-430

Estado Libre Asociado
de Puerto Rico, et al.

    Peticionarios

PER CURIAM

San Juan, Puerto Rico a 12 de septiembre de 2002

I

**El 21 de diciembre de 1993, aproximadamente a las 9:00 p.m., ocho (8) agentes de la policía se personaron a la residencia de la Sra. Eneida Vélez Feliciano, donde ésta se encontraba en compañía de sus dos (2) hijos menores de edad. También se encontraba allí su hermana, la Sra. Hilda Ortiz Feliciano, y el compañero sentimental de ésta, el Sr. Ramón Jesús Sambolín (en adelante demandantes o recurridos). Los agentes fueron a la residencia con el propósito de diligenciar una orden de arresto por alegadas infracciones a la ley conocida como "Ley de**

Bolita", 33 L.P.R.A. § 1247 *et seq.* El operativo culminó con el arresto de la Sra. Ortiz, la Sra. Vélez y el Sr. Sambolín.

Eventualmente los cargos criminales contra los aquí recurridos fueron desestimados. Así las cosas, el 20 de diciembre de 1994, la Sra. Ortiz, el Sr. Sambolín y la Sra. Feliciano, esta última por sí y además en representación de sus dos (2) hijos menores de edad, radicaron una demanda por violación a sus derechos civiles ante el Tribunal de Distrito Federal para el Distrito de Puerto Rico al amparo de la Ley Federal de Derechos Civiles, 42 U.S.C. § 1983, contra el Superintendente de la Policía[1] y los ocho (8) agentes del orden público que intervinieron en el operativo de 21 de diciembre de 1993. Alegaron que los policías que intervinieron en el operativo utilizaron palabras insultantes hacia los demandantes frente a familiares y vecinos, y que se utilizó fuerza excesiva injustificada contra ellos, todo esto en violación a sus derechos civiles y constitucionales. Adujeron que las actuaciones de los demandados les ocasionaron ansiedad, sufrimientos y angustias mentales por los cuales reclamaron daños por aproximadamente siete millones de dólares ($7,000,000).

---

[1] Las alegaciones contra el Superintendente incluyeron, en términos generales: (1) haber tolerado y encubierto conducta abusiva de parte de los miembros de la policía hacia los ciudadanos; (2) haber autorizado, implícitamente, las acciones de los agentes demandados; y (3) falta de supervisión adecuada que contribuyó a que los agentes demandados incurrieran en la conducta que violó los derechos civiles de los demandantes.

**Los demandados solicitaron representación del Secretario de Justicia (en adelante el Secretario) al amparo del Art. 12 de la Ley de Reclamaciones y Demandas contra el Estado, Ley Núm. 104 de 29 de junio de 1955 (en adelante Ley Núm. 104), según éste fuera adicionado por la Ley Núm. 9 de 26 de noviembre de 1975, según enmendada, 32 L.P.R.A. § 3085-3087 (en adelante Ley Núm. 9), la cual les fue concedida. Celebrado el juicio por jurado ante el Tribunal de Distrito Federal, recayó veredicto que declaró con lugar la demanda y ordenó a siete (7) de los ocho (8) agentes demandados a satisfacer la cantidad de treinta y cuatro mil dólares ($34,000) en daños compensatorios y nueve mil dólares ($9,000) en daños punitivos. Posteriormente, el tribunal también impuso a los demandados el pago de veintisiete mil dólares ($27,000) en concepto de honorarios de abogado.[2]**

En **marzo de 1997**, el Secretario le notificó a los demandados que el Estado Libre Asociado de Puerto Rico (en adelante E.L.A. o Estado) no asumiría el pago de la sentencia recaída contra ellos. Adujo que había quedado demostrado en el juicio que medió negligencia inexcusable en las actuaciones de los agentes contra los demandantes. Luego de un procedimiento administrativo solicitando la revisión de la determinación del Secretario, éste mantuvo su posición de que el Estado no asumiría el pago de la sentencia recaída contra los demandados. No existe evidencia en el expediente a los efectos de que se haya radicado ante el foro judicial correspondiente recurso

---

[2] Cabe señalar que no se le impuso responsabilidad

alguno impugnando la determinación final del Secretario. Lo que sí resulta claro es que ni los demandados ni el Estado pagaron la sentencia dictada por el Tribunal de Distrito Federal.

Así las cosas, en febrero de 1998, los demandantes presentaron, como parte del mismo pleito llevado ante el Tribunal de Distrito Federal bajo la Ley Federal de Derechos Civiles, una moción para que dicho tribunal ordenase al Secretario a satisfacer la sentencia a favor de éstos. El Secretario se opuso bajo el fundamento de que la enmienda once de la Constitución de Estados Unidos impedía este tipo de acción contra el E.L.A. en el foro federal.

El Tribunal de Distrito Federal denegó la moción presentada por los demandantes. Éstos recurrieron al Tribunal de Circuito de Apelaciones para el Primer Circuito, el cual confirmó la decisión del tribunal apelado.[3] Concluyó el Tribunal que el verdadero objetivo de la moción presentada por los demandantes era obtener una sentencia (money judgement) contra el E.L.A. para que éste les indemnizara por los daños sufridos. Entendió el Tribunal que las disposiciones de la Ley Núm. 9 que autorizan al Secretario a brindar representación legal a un funcionario público demandado por violar los derechos civiles de un ciudadano no constituyen una renuncia a la

---

alguna al Superintendente.

[3] De esta sentencia del Tribunal de Circuito de Apelaciones para el Primer Circuito surge todo el trámite llevado ante el Secretario de Justicia bajo las disposiciones de la Ley Núm. 9.

inmunidad del E.L.A. contra ser demandado en el foro federal.

En el entretanto, el **9 de julio de 1997**, casi tres (3) años después de ocurridos los hechos que dieron lugar a la demanda original en el foro federal, los demandantes presentaron una acción en daños y perjuicios por los mismos hechos, esta vez sólo **contra el E.L.A.** y ante el Tribunal de Primera Instancia local. Alegaron que las actuaciones de los agentes del estado habían violado sus derechos civiles y constitucionales, que dichos actos les habían ocasionado severas angustias mentales y emocionales, y que por dichas actuaciones el E.L.A., como patrono de los demandados, era responsable. Señalaron además que por haber recaído sentencia contra los agentes en el pleito radicado ante el foro federal, el Estado estaba impedido bajo la doctrina de cosa juzgada de litigar la cuestión relativa a la violación de derechos civiles, así como tampoco podía negar responsabilidad por los actos de los funcionarios ya que el Secretario les había provisto representación ante el foro federal. Los demandantes reclamaron daños ascendientes a un millón cuatrocientos cincuenta mil dólares ($1,450,000). Por último, los demandantes específicamente alegaron en la demanda que "**la sentencia emitida por la Corte Federal a tono con el veredicto emitido no ha sido satisfecha en forma alguna**."

El E.L.A. contestó la demanda negando toda responsabilidad por negligencia. Posteriormente, presentó una moción de desestimación en la cual alegó que la demanda estaba prescrita. Argumentó además que por

haber recaído una sentencia en el foro federal contra los funcionarios públicos por los mismos hechos, el Art. 8 de la Ley Núm. 104 prohibía la demanda presentada contra el E.L.A. en el foro local.[4]

Se celebró una vista sobre el estado de los procedimientos en la cual las partes reiteraron sus respectivas posiciones. De la minuta surge que los demandantes plantearon además que **"el término para retirar el beneficio de la Ley Núm. 9 a los demandados venció."** En cuanto a ese extremo, el E.L.A. señaló que **"la sentencia que emitiera el Tribunal Federal no ha sido pagada ya que la misma fue dictada contra los funcionarios en su carácter personal y no como empleados del E.L.A."**

El tribunal de instancia dictó sentencia en la cual desestimó la demanda contra el E.L.A. Determinó que la doctrina de cosa juzgada no era de aplicación al caso pues no se cumplía con el requisito esencial de identidad de partes, ya que el E.L.A. no puede considerarse parte en el pleito llevado ante el Tribunal de Distrito Federal pues no ha dado su consentimiento para ser demandado en los tribunales federales. En consecuencia, el foro de instancia concluyó que la demanda en contra del E.L.A. estaba prescrita, ya que la acción ante el Tribunal de

---

[4] El Art. 8 de la Ley Núm. 104 dispone, en lo pertinente, lo siguiente:

> La sentencia que se dicte en cualquier acción autorizada [por esta ley] impedirá toda acción por parte del reclamante, por razón de la misma cuestión o materia contra el funcionario, agente o empleado cuyo acto u omisión dio origen a la acción; y la sentencia contra el funcionario, agente o

Distrito Federal no tuvo el efecto de interrumpir el término prescriptivo de un (1) año en cuanto al Estado, y no hubo acto extrajudicial alguno que interrumpiese dicho término.

Inconformes, los demandantes apelaron esta sentencia ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito). El foro apelativo confirmó el dictamen del tribunal de instancia a los efectos de que, en cuanto a los demandantes mayores de edad, la acción presentada ante el foro local estaba prescrita. No obstante concluyó que, en virtud de lo dispuesto en el Art. 40 del Código de Enjuiciamiento Civil, 32 L.P.R.A. § 254, la demanda contra el E.L.A. no estaba prescrita en cuanto a los menores que figuraban como demandantes.[5]

De esta determinación, ambas partes recurrieron ante nos mediante certiorari. Los demandantes señalaron como único error la determinación del Tribunal de Circuito de que la demanda estaba prescrita en cuanto a los demandantes adultos. Por su parte, el E.L.A. señaló como error la determinación del foro apelativo de revocar la sentencia del tribunal de instancia cuando existían fundamentos

---

empleado impedirá igualmente toda acción contra el Estado. 32 L.P.R.A. § 3083.

[5] El Art. 40 del Código de Enjuiciamiento Civil, dispone en lo pertinente que:

Si la persona con derecho a ejercitar una acción, que no sea la reinvindicatoria de propiedad inmueble, fuese al tiempo de nacer la causa de acción:

(1) menor de edad; ...

el tiempo que dure tal incapacidad no se considerará parte del tiempo fijado para empezar a ejercitar la acción.

adicionales a la prescripción que justificaban la desestimación de la demanda en cuanto a todos los demandantes, incluyendo los menores de edad. Específicamente, el E.L.A. alegó que el Art. 8 de la Ley Núm. 104[6] impedía la demanda presentada ante el foro de instancia local.

Acordamos revisar y expedimos el recurso solicitado por el E.L.A.[7] Ambas partes han comparecido y con el beneficio de sus argumentos resolvemos.

II

Al disponer del caso ante nuestra consideración, nos guiaremos por el sabio principio de que los tribunales estamos llamados a resolver **lo que proceda en derecho**. Regla 70 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Es necesario pues, que analicemos las disposiciones de la Ley Núm. 9 relacionadas con la concesión de representación legal de los funcionarios públicos demandados por violaciones a derechos civiles; los factores que han de tomarse en consideración al determinar si el Estado asumirá o no el pago de la sentencia que en su día pueda recaer contra el funcionario; y el trámite administrativo para revisar la determinación que haga el Secretario en cuanto a este extremo.

---

[6]    Véase esc. 4.

[7]    Mediante Resolución de 16 de junio de 2000, denegamos la petición de certiorari presentada por los demandantes.

En términos generales, la Ley Núm. 9 establece que un funcionario o empleado del E.L.A. que sea demandado en daños y perjuicios en su carácter personal por actos u omisiones incurridos de buena fe en el ejercicio de sus funciones **y que no tenga disponibles los beneficios de la Ley Núm. 104**, puede solicitar que el Estado le provea representación legal y pague la sentencia que en su día pueda recaer. En García v. E.L.A., 146 D.P.R. 725, 739 (1998) explicamos que "la Ley Núm. 9 tiene el propósito de **complementar** la Ley Núm. 104... [L]as acciones cubiertas por la Ley Núm. 9 son aquellas que constituyen violaciones a los derechos civiles del demandante, **con las excepciones provistas por la Ley Núm. 104 y el Reglamento.**"

Para implementar lo dispuesto en la Ley Núm. 9, el Secretario promulgó el Reglamento sobre Representación Legal y Pago de Sentencia bajo la Ley de Reclamaciones y Demandas contra el Estado, Reglamento Núm. 4071, Departamento de Justicia, 8 de septiembre de 1989 (en adelante Reglamento). Los Arts. VI, VII, y VIII del Reglamento regulan el procedimiento para solicitar y obtener el beneficio inicial de la representación legal por parte del Secretario. Luego, el Art. X regula lo referente al procedimiento que debe seguir el funcionario para conseguir que el Secretario autorice el pago por parte del Estado de la sentencia recaída contra el funcionario. Específicamente, el Art. X del Reglamento dispone que, de acuerdo a la información y los documentos sometidos por el funcionario "el Secretario o la persona designada por éste evaluará dichos documentos, considerando los hechos

que determine probados el tribunal o que surjan de la prueba desfilada... **[y] decidirá si corresponde pagar la sentencia de acuerdo a la Ley y este Reglamento.**" Art. X(B) y (C) del Reglamento.

Como vemos, la determinación inicial de conceder representación legal al funcionario público demandado por violaciones a los derechos civiles de un ciudadano y la determinación posterior de si el E.L.A. asumirá o no el pago de la sentencia recaída contra éste son dos (2) procedimientos separados e independientes. De acuerdo con esto, en <u>In re Secretario de Justicia</u>, 118 D.P.R. 827, 832 esc. 3 (1987), expresamos que el beneficio principal que provee la Ley Núm. 9 es la representación legal. El pago de la totalidad de la sentencia no es automático, sino que queda a la discreción del Secretario, la cual no es absoluta. Esta interpretación encuentra fundamento adicional en el Art. 14 de la Ley Núm. 104, el cual dispone que el Secretario determinará en qué casos el E.L.A. asumirá la representación legal y "**<u>posteriormente</u>**, considerando los hechos que determine probados el tribunal o que surjan de la prueba desfilada, **<u>decidirá si procede el pago de la totalidad de la sentencia</u>**." 31 L.P.R.A. § 3087.

Queda pues meridianamente claro que es inmeritoria la alegación de los demandantes de que el Estado está impedido de negar responsabilidad en este caso por el hecho de que el Secretario le proveyó representación legal a los funcionarios en el pleito llevado en la corte federal. De acuerdo a la Ley y el Reglamento, la determinación inicial

de ofrecer representación legal al funcionario público demandado en su carácter personal no obliga al Estado a asumir el pago de la sentencia que en su día se dicte contra dicho funcionario. Más aún, la propia ley dispone que "lo aquí provisto no debe entenderse bajo ningún concepto como que convierte al Estado en asegurador de los servidores públicos, ni ...que constituye una renuncia a la inmunidad soberana del Estado Libre Asociado." 32 L.P.R.A. § 3085.

Por otra parte, los Arts. XI-XIII del Reglamento establecen el procedimiento administrativo para la revisión de una determinación adversa del Secretario en cuanto a la denegación o revocación al funcionario demandado de los beneficios de la Ley Núm. 9. En términos generales, el Secretario deberá notificar al solicitante o beneficiario de su intención de denegar o revocar los beneficios de la Ley Núm. 9 y éste, si lo interesa, deberá solicitar dentro del término de diez (10) días una vista administrativa. Dentro de los noventa (90) días de celebrada la vista, el Secretario deberá emitir la resolución final y si el solicitante o beneficiario se encuentra inconforme, deberá presentar reconsideración de dicha determinación. Finalmente, el Art. XIV dispone que el solicitante o beneficiario que haya agotado los remedios administrativos que se establecen en la Ley y el Reglamento **podrá interponer recurso de revisión judicial** de la determinación final del Secretario.

Como vemos, el Reglamento dispone específicamente para la revisión de la determinación del Secretario de no asumir la representación o el pago de la sentencia a favor

del funcionario público demandado, según sea el caso.  Es un trámite de revisión primero administrativa, y luego judicial, que sólo pueden llevar las personas a las cuales el Reglamento autoriza: **el beneficiario**, o sea, el funcionario, su cónyuge o la sociedad legal de gananciales compuesta por ambos.[8]

De acuerdo a las disposiciones de Ley y Reglamento que hemos reseñado, analicemos el caso de marras.

## III

Este caso se inició con una demanda presentada ante el Tribunal de Distrito Federal bajo la Ley Federal de Derechos Civiles contra los agentes del estado en su carácter personal.  Durante este pleito, el Secretario les proveyó a estos agentes representación legal. Recaída sentencia contra los funcionarios, el Secretario concluyó que había mediado negligencia inexcusable en las actuaciones de éstos, por lo cual denegó el pago de la sentencia al amparo de la Ley Núm. 9.[9]  Esta determinación fue objeto de revisión mediante procedimiento administrativo en el cual el Secretario refirmó su determinación de denegar el beneficio del pago de la sentencia a los agentes demandados.  **No surge del expediente que se haya solicitado revisión judicial de la determinación final del Secretario**, por lo que debemos

---

[8]    Véase Art. IV(A) del Reglamento.
[9]    La Ley Núm. 9 dispone en lo pertinente que "Las disposiciones de este título no cubrirán los siguientes actos u omisiones incurridos por un funcionario, ex funcionario, empleado o ex empleado:
    (a)...
    (b)...
    (c)**cuando medie negligencia inexcusable**

concluir que la misma advino final y firme. Aunque no surge del expediente con claridad la fecha exacta de la determinación del Secretario, por lo menos para **marzo de 1997** éste ya había manifestado su posición a los efectos de que el E.L.A. no asumiría el pago de la sentencia recaída contra los funcionarios.

Ante esta situación, el **9 de julio de 1997** los demandantes radicaron la acción en daños que nos ocupa en contra del E.L.A., mientras que a su vez, en **febrero de 1998**, decidieron presentar una moción ante el Tribunal de Distrito Federal para que éste ordenase al Secretario autorizar el pago por parte del E.L.A. bajo las disposiciones de la Ley Núm. 9. Correctamente, el Tribunal de Distrito Federal denegó dicha moción, decisión que fue confirmada por el tribunal apelativo federal.

Un análisis de la situación procesal que ha seguido este caso demuestra que los demandantes, bajo el supuesto de una demanda en daños y perjuicios en contra del E.L.A., **lo que realmente pretenden es atacar colateralmente la determinación administrativa del Secretario de no pagar la sentencia recaída en el foro federal contra los funcionarios en su carácter personal**. De hecho, la última alegación de la demanda específicamente señala el hecho de que la sentencia dictada por el foro federal no ha sido satisfecha en forma alguna.

Lo alegado en la demanda también refleja que la misma fue presentada como un último recurso para lograr en el foro judicial local lo que no pudieron conseguir en el foro

(d)...

federal o en el foro administrativo.  La demanda contra del E.L.A sólo contiene alegaciones contra los agentes que intervinieron en el operativo, todas éstas actuaciones intencionales y de naturaleza delictiva.  En la demanda se reclaman daños producto de la "fuerza innecesaria para llevar a cabo el registro contra los demandantes"; "que como cuestión de hecho todas y cada una de las acusaciones eran falsas y producto de una fabricación"; "que los agentes del orden público **no tenían causa probable** para acusar a las demandantes"; y "que las actuaciones de los funcionarios públicos han privado de sus derechos civiles a los aquí comparecientes."

Como se puede apreciar, todos los actos dañosos que se imputan en la demanda **no fueron actos negligentes, sino intencionales**, producto de un arresto ilegal.  Por este tipo de actuaciones simple y sencillamente el E.L.A. no ha consentido en ser demandado, por ende no responde al amparo de la Ley Núm. 104.  Los demandantes conocían esta realidad al comenzar su acción ante el foro federal, **es por ello que inicialmente optaron por demandar a los funcionarios en su carácter personal en dicho foro.**  No fue sino hasta que fueron confrontados con la realidad legal de que el E.L.A. no asumiría el pago de la sentencia recaída a favor de éstos, que decidieron presentar una demanda en daños en el foro local contra el E.L.A. la cual claramente no procedía al amparo de la Ley Núm. 104, ya que el Art. 6(d) de dicha Ley específicamente dispone que el Estado no puede ser demandado por actos u omisiones de sus funcionarios, empleados o agentes "constitutivas de

acometimiento, **agresión** u otro delito contra la persona, encarcelación ilegal, **arresto ilegal**, persecución maliciosa, calumnia, libelo, difamación y falsa representación e impostura." De otra parte, la Ley Núm. 9 establece que sus disposiciones no cubrirán los actos u omisiones de los funcionarios o empleados públicos cuando éstas (a) constituyen delito; (b) ocurran dentro del marco de sus funciones oficiales; (c) cuando medie negligencia inexcusable; o (d) cuando se haya establecido un estado de derecho diferente mediante sentencia final y firme. 32 L.P.R.A. § 3088.

En resumen, lo que realmente se pretende conseguir con esta acción es revisar judicialmente una determinación del Secretario que ya había advenido final y firme. Bajo las disposiciones del Reglamento, un demandante no tiene capacidad jurídica para reclamarle al Estado el pago o para impugnar la determinación del Secretario en cuanto a denegar la concesión del mismo. El beneficio del pago de una sentencia contra el funcionario público lo puede reclamar sólo dicho funcionario. En García v. E.L.A., supra, pág. 739-740, determinamos que "la Ley y su Reglamento están redactados de tal forma que se les concede únicamente la potestad a los funcionarios o empleados públicos para solicitar sus beneficios, esto es, la representación legal y posteriormente el pago de la sentencia." La situación de autos simplemente no cumple con estos requisitos.

IV

Por todo lo antes expuesto, se confirma aquella parte de la sentencia dictada por el Tribunal de Circuito de Apelaciones que ordenó la desestimación de la demanda en cuanto a los demandantes adultos.  Se revoca la parte de la sentencia de dicho foro en lo referente a los demandantes menores de edad, y se desestima la demanda presentada por éstos.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Hilda Ortiz Feliciano,
et al.

    Recurridos

       v.                            CC-2000-430

Estado Libre Asociado
de Puerto Rico, et al.

    Peticionarios


SENTENCIA


San Juan, Puerto Rico a 12 de septiembre de 2002


      Por los fundamentos expuestos en la Per Curiam que antecede, se confirma aquella parte de la sentencia dictada por el Tribunal de Circuito de Apelaciones que ordenó la desestimación de la demanda en cuanto a los demandantes adultos. Se revoca aquella parte de la sentencia de dicho foro en lo referente a los demandantes menores de edad, y se desestima la demanda presentada por éstos.

      Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez concurre sin opinión escrita. El Juez Asociado señor Rebollo López no intervino.


                Patricia Otón Olivieri
          Secretaria del Tribunal Supremo