

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Adaline Torres Santiago | |
| Recurrida | Certiorari |
| v. | 2011 TSPR 78 |
| Departamento de Justicia, por conducto del Secretario de Justicia, Hon. Antonio Sagardía | 182 DPR _____ |
| Peticionarios | |

Número del Caso: CC - 2010 - 696

Fecha: 25 de mayo de 2011

Tribunal de Apelaciones:

Región Judicial de San Juan

Jueza Ponente:

Hon. Emmalind García García

Oficina de la Procuradora General:

Lcdo. Karla Z. Pacheco Álvarez
Procuradora General Auxiliar

Abogados de la Parte Recurrida:

Lcdo. Rafael González Vélez
Lcda. Keila M. Ortega - Casals

Materia: Revisión Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Adaline Torres Santiago

    Recurrida

      v.

Departamento de Justicia, por
Conducto del Secretario de
Justicia, Hon. Antonio
Sagardía

    Peticionarios

*Certiorari*

CC-2009-0696

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

En San Juan, Puerto Rico, a 25 de mayo de 2011.

En el presente caso nos corresponde resolver si el Tribunal de Apelaciones erró al revocar la determinación del peticionario, Departamento de Justicia, de denegar una solicitud para recibir beneficios de representación legal presentada por la recurrida, Adaline Torres Santiago, por conducto del Art. 12 de la Ley Núm. 104 de 29 de junio de 1955, según enmendada, conocida como Ley de Reclamaciones y Demandas contra el Estado, 32 L.P.R.A. sec. 3085. *Ab initio*, resolvemos en la afirmativa.

A continuación, exponemos los hechos que dieron génesis a la interrogante planteada.

I

La Sra. Adaline Torres Santiago (recurrida) fue Presidenta y Gerente General de la Autoridad Metropolitana de Autobuses (AMA) por varios años. En el año 2006 fue demandada en la Corte de Distrito Federal para el Distrito de Puerto Rico en el caso *Orria-Medina et als. v. Autoridad Metropolitana de Autobuses et als.*, Civil Núm. 06-1643. En lo pertinente, se alegó en la Demanda que la recurrida, de forma intencional, ordenó que se cancelaran los viajes que tenían programados varios participantes o usuarios del Programa Llame y Viaje de la AMA hacia el Capitolio. Estos iban a emitir su opinión sobre el aumento tarifario que se implantó en ese programa en unas vistas públicas ante la Asamblea Legislativa. En específico en la Demanda se alegó que la recurrida "illegally raise the rates applicable to the participants of the 'Llame y Viaje' program, and afterwards conspired to prevent them from testifying at a hearing of the Consumer Affairs Committee of the Puerto Rico House of Representatives against the illegal rate increase".[1] Se alegó además, que la recurrida "intentionally and tortiously took actions to discriminate and retaliate against users of the program who wanted to complain about deficiencies in the same and

---

[1] Apéndice de la Petición de *Certiorari*, pág. 57.

who wanted to complain about the unjust and illegal rate increase".[2] Asimismo, se adujo en la Demanda que:

> 27. Around December 6, 2005, codefendant Adaline Torres-Santiago became aware that many users of the program wanted to attend the hearings held by the Committee to complain about the rate increase, as well as about many other problems and abuses they are victim of.
>
> 28. Codefendant Torres-Santiago became enraged at the prospect of clients of the program complaining about the irregular way in which the rate was increased, about the lack of compliance with the requirements for a rate increase, and about other problems confronted by the program. This codefendant was well aware of who these people were, since she had personally met with some of them, and she knew their complaints. The plaintiffs not only wanted to complain about the rate increase, which was done illegally, but also about the routinary mistreatment they are subjected to, including rude comments by bus drivers, bus drivers of the regular service who do not want to activate ramps for users who need them to enter the buses, and other types of verbal and psychological abuse.
>
> 29. Trying to minimize or abscom [sic] criticism of the program, codefendand [sic] Torres-Santiago pressured then-director of the program, Mrs. Maria Cordero-Rodríguez, to make those reservations "disappear". Torres-Santiago specifically indicated that she did not want those customers to attend the hearing to express their complaints. Torres Santiago told Ms. Cordero-Rodríguez something like "these [people] want to speak badly about us and they expect us to transport them there". ...
>
> 30. The conduct, action or omission of Ms. Torres was a violation of 28 CFR 35.130 and 49 CFR 37.131(d), which prohibits imposing restrictions or priorities based on the purpose of the trip. ...[3]

---

[2] *Íd.*, pág. 60.

[3] *Íd.*, págs. 65-66.

Como consecuencia de la Demanda instada, el 17 de noviembre de 2006, la recurrida le solicitó mediante carta al entonces Secretario de Justicia, Hon. Roberto Sánchez Ramos, que le proveyera los beneficios de representación legal para el caso federal, conforme al Art. 12 de la Ley Núm. 104, *supra*. El 10 de enero de 2007, el otrora Secretario de Justicia le cursó una misiva en la que le notificó a la recurrida su intención de negarle el beneficio solicitado.[4] Acotó que, de la evaluación de la solicitud y de los documentos recibidos, se desprendían actos indicativos de conducta intencional. Fundamentó su intención de denegar los servicios de representación legal en el Art. 12 de la Ley Núm. 104, *supra*, que enumera las condiciones a las cuales está sujeta la concesión del beneficio. De esa forma señaló que "[c]ualquier acto por parte del funcionario que sea indicativo de una conducta intencional o constitutiva de delito lo hace inelegible para recibir los beneficios de la Ley Núm. 104".[5] En esta comunicación también se le indicó a la recurrida que tenía derecho a solicitar por escrito una vista informal para mostrar causa por la cual no debía revocarse[6] el beneficio de representación legal.[7]

---

[4] *Íd.,* pág. 29.

[5] *Íd.*

[6] Aunque la misiva indicaba "revocársele", del contexto de los autos surge que la mostración de causa era para que no se le "denegaran" los beneficios de representación legal. No cabía hablar de revocación porque los beneficios no se le habían concedido a la recurrida.

El 19 de enero de 2007, la recurrida solicitó la celebración de una vista informal ante el Departamento de Justicia.[8] *A posteriori*, el Departamento de Justicia le notificó que la celebración de la vista informal se llevaría a cabo el lunes 23 de abril de 2007.[9] Durante la vista informal declaró la recurrida y también se ofreció una Declaración Jurada de su chofer, el Sr. René Ramos Martel. Ambos negaron los hechos imputados a ésta en la Demanda federal.

Celebrada la vista informal, el Oficial Examinador rindió un Informe en el cual recomendó denegar el beneficio solicitado por la recurrida. En su Informe señaló que no le mereció credibilidad la declaración de la recurrida ni la de su chofer.[10] En las determinaciones de hecho el Oficial Examinador determinó, *inter alia*, que un aumento en las tarifas de los servicios de la AMA había motivado una investigación promovida por la Cámara de Representantes, la cual le ordenó a las Comisiones de Asuntos del Consumidor y a la de Infraestructura y Transportación que revisaran las tarifas fijadas por la AMA; que la Comisión de Asuntos del Consumidor celebró una vista pública el 7 de diciembre de 2005 a la que no

---

[7] *Íd.*, pág. 30.

[8] *Íd.*, pág. 32.

[9] *Íd.* pág. 34.

[10] *Íd.*, págs. 20, 22 y 25.

pudieron comparecer varias personas porque no se les proveyó el servicio de transportación del Programa Llame y Viaje del cual eran usuarios, a pesar de que estos viajes habían sido programados y confirmados por los usuarios; que el 23 de diciembre de 2005, la recurrida compareció ante la referida Comisión donde contestó bajo juramento, a preguntas que le hicieron varios legisladores, que no tenía conocimiento de las cancelaciones de los participantes del Programa Llame y Viaje y que tampoco había dado órdenes para que se realizaran las cancelaciones; y que la Sra. María del C. Cordero Rodríguez, Directora del Programa Llame y Viaje ordenó, a solicitud de la recurrida, la cancelación y eliminación en el sistema de los viajes de los usuarios que querían comparecer a deponer a las vistas de la Comisión relacionadas con los aumentos de tarifa del Programa Llame y Viaje.[11] Esta última afirmación se fundó en las transcripciones de las declaraciones de la señora Cordero Rodríguez ante la Cámara de Representantes, las cuales obraban en el expediente del Oficial Examinador.

Finalmente el Oficial Examinador concluyó que, a base de la evaluación de la prueba documental y testimonial presentada, entendía que la acción realizada por la recurrida era indicativa de una conducta intencional y/o constitutiva de delito que la hacía inelegible para

---

[11] *Íd.*, págs. 21-23.

recibir los beneficios de representación legal por parte del Departamento de Justicia. Señaló que la conducta intencional estaba directamente vinculada con las alegaciones de la Demanda que originó la protección solicitada y que las órdenes impartidas por la recurrida no constituían actos u omisiones incurridos de buena fe y dentro del marco de sus funciones.[12]

Cabe destacar, que el representante legal de la recurrida alegó durante la vista informal que tenía prueba contra las alegaciones que se hacían en la Demanda. Sin embargo, se negó a presentarla bajo el fundamento de que el Secretario de Justicia era parte contraria en los procedimientos de tipo criminal que había en contra de la recurrida.[13]

El 1 de diciembre de 2008, notificada el 2 de diciembre de ese mismo año, el Departamento de Justicia emitió una Resolución mediante la cual acogió la recomendación que hizo el Oficial Examinador en su Informe y denegó la solicitud presentada por la recurrida.[14] Inconforme con esa decisión, la recurrida presentó una

---

[12] *Íd.*, pág. 25.

[13] *Íd.*, pág. 20. De las determinaciones de hecho que hizo el Oficial Examinador surge que como resultado de la investigación legislativa, se hizo un referido ante la Oficina del Fiscal Especial Independiente en contra de la recurrida. Así, se presentó una acusación contra la recurrida por alegadamente haber cometido los delitos de perjurio y de alteración o mutilación de propiedad bajo los Arts. 274 y 260 del Código Penal de Puerto Rico, respectivamente. No obstante, los días 14, 15 y 22 de mayo de 2009 se celebró la vista preliminar del caso y se determinó que no había causa para acusar a la recurrida por los cargos imputados.

[14] *Íd.*, págs. 16-18.

solicitud de reconsideración. El Departamento de Justicia no actuó sobre la solicitud de reconsideración, por lo que el 5 de febrero de 2009 la recurrida presentó ante el Tribunal de Apelaciones un recurso de revisión administrativa.

En síntesis, la recurrida alegó ante el Tribunal de Apelaciones que en el expediente no había evidencia sustancial para sostener las determinaciones de hechos del Informe y que se le había violentado su debido proceso de ley al admitirse declaraciones juradas de la señora Cordero Rodríguez en su contra sin que pudiera contrainterrogar a ésta. También esgrimió que el pleito federal era sobre el alza de unas tarifas y no sobre la alegada conducta intencional o constitutiva de delito.

Por su parte, el Departamento de Justicia argumentó que tuvo ante su consideración prueba clara y convincente de que la recurrida infringió postulados legales y reglamentarios aplicables como funcionaria pública que motivó una serie de procedimientos administrativos y judiciales entre los cuales había uno de naturaleza criminal. Señaló también que el testimonio vertido por la señora Cordero Rodríguez le mereció entera credibilidad; que la recurrida tuvo su oportunidad de ofrecer su testimonio y dar su versión al Oficial Examinador y éste no le dio credibilidad; y que la recurrida no tenía más

derecho de lo que se le concedió por tratarse de una vista informal.

Evaluados los argumentos de las partes, el Tribunal de Apelaciones revocó la Resolución emitida por el Departamento de Justicia. Concluyó que el Departamento de Justicia había abusado de su discreción porque el procedimiento seguido fue injusto y arbitrario al negarle la oportunidad a la recurrida de contrainterrogar a la señora Cordero Rodríguez. Además, el foro *a quo* resolvió que el Departamento de Justicia incumplió con las garantías básicas del debido procedimiento de ley en varias formas: al no observar las exigencias de la notificación denegatoria de los beneficios, al rechazar las declaraciones juradas exculpatorias ofrecidas por la recurrida, al negarle credibilidad a la recurrida y su testigo y al descansar en prueba obtenida de otros procesos sin darle la oportunidad de confrontarla. Además, concluyó que no existía evidencia sustancial en el expediente que justificara privar a la recurrida de la representación legal que solicitó.

Por no estar contestes con ese dictamen, el Departamento de Justicia recurre ante nos de forma oportuna y aduce los errores siguientes:

> Erró el Tribunal de Apelaciones al concluir que el Departamento de Justicia debe proveer una vista formal para atender una solicitud de representación legal bajo la Ley 9, contrario a lo que establece el reglamento aplicable que

expresamente dispone que se celebrará una vista informal.

Erró el Tribunal de Apelaciones al determinar que en el expediente administrativo no existía evidencia sustancial que apoyara la determinación de denegar los beneficios de la Ley 9 a la Sra. Adaline Torres Santiago.

Vista la petición de *certiorari*, acordamos expedir. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver sin ulterior trámite.

## II

En primer orden, el Departamento de Justicia sostiene en su alegato que el caso de autos no se ha tornado académico por los acontecimientos acaecidos con posterioridad a la presentación del recurso ante este Foro. Nos indica que la Demanda presentada en el caso *Emilio Orria Medina, et als. v. Metropolitana Bus Authority, et als., supra*, fue desestimada con perjuicio --determinación que advino final y firme-- luego de que las partes llegaran a un Acuerdo Transaccional para finiquitar las alegaciones de la Demanda. Empero, arguye que es de aplicación la excepción a la doctrina de academicidad que establece que se podrá atender un caso cuando algunos aspectos de la controversia se han tornado académicos pero persisten importantes efectos colaterales. Señala que todavía queda por decidirse si la recurrida tiene que reembolsarle al Estado los honorarios de abogados y las costas en que éste incurrió al concederle

de forma preliminar el beneficio de representación legal en el caso federal antes de que se transigiera el pleito.[15] En ese sentido, apunta que la decisión preliminar de conceder representación legal a la parte recurrida no es óbice para que pueda prevalecer en el caso presente y recobrar los gastos, costas y honorarios de abogados incurridos en la representación legal ofrecida preliminarmente a la recurrida. La parte recurrida no cuestiona u objeta esta contención.

Por ende, como cuestión de umbral debemos resolver si el caso *sub judice* se ha tornado académico por razón de que las partes hayan transigido el caso *Emilio Oria Medina, et als. v. Metropolitana Bus Authority, et als.*, *supra*, que fue el que originó la solicitud del beneficio de representación legal que le hizo la recurrida al Departamento de Justicia.

Conforme al principio de justiciabilidad los tribunales limitan su intervención para resolver controversias reales y definidas que afectan las relaciones jurídicas de partes antagónicas u opuestas. *U.P.R. v. Laborde Torres y otros I*, res. el 13 de

---

[15] Véase la Resolución emitida por el Departamento de Justicia el 16 de junio de 2009 luego de que el Tribunal de Apelaciones dictara la Sentencia que favoreció a la recurrida en el caso de autos. En esa Resolución el Departamento de Justicia le concedió a la recurrida, de forma preliminar, los beneficios de representación legal "a tenor con el Reglamento sobre Representación Legal y Pago de Sentencia bajo la Ley de Reclamaciones y Demandas contra el Estado". Véase, Apéndice de la Petición de *Certiorari*, págs. 692-693. El Departamento de Justicia dispuso expresamente que la "resolución es de carácter preliminar y tendrá vigencia hasta tanto se culmine el recurso de apelación que se llevará a cabo [ante el Tribunal Supremo]. *Íd.*, pág. 692.

diciembre de 2010, 180 D.P.R. ___ (2010), 2010 T.S.P.R. 225, 2010 J.T.S. 234; *E.L.A. v. Aguayo*, 80 D.P.R. 552, 584 (1958). Los tribunales solamente pueden evaluar aquellos casos que sean justiciables. *Moreno v. Pres. U.P.R. II*, res. el 10 de mayo de 2010, 178 D.P.R. ___ (2010), 2010 T.S.P.R. 70, 2010 J.T.S. 79. Así, un tribunal de justicia no debe atender una controversia hipotética, abstracta o ficticia. *Íd.*

La doctrina de academicidad es una manifestación del principio de justiciabilidad. *Noriega v. Hernández Colón*, 135 D.P.R. 406 (1994). La academicidad recoge la situación en que, aun cumplidos todos los criterios de justiciabilidad, ocurren cambios en los hechos o el derecho durante el trámite judicial que tornan académica o ficticia la solución del pleito. *U.P.R. v. Laborde Torres y otros I*, *supra*; *El Vocero v. Junta de Planificación*, 121 D.P.R. 115, 123 (1988); *Com. de la Mujer v. Srio. de Justicia*, 109 D.P.R. 715, 724 (1980).

La teleología de esta doctrina es: (1) evitar el uso innecesario de los recursos judiciales; (2) asegurar que haya la adversidad suficiente para que las controversias se presenten y defiendan competente y vigorosamente; y (3) evitar precedentes innecesarios. *Com. de la Mujer v. Srio. de Justicia*, *supra*, pág. 725. Un caso académico es aquel que intenta "obtener un fallo sobre una controversia disfrazada, que en realidad no existe, o una determinación

de un derecho antes que éste haya sido reclamado, o una sentencia sobre un asunto, que al dictarse, por alguna razón no podrá tener efectos prácticos sobre una controversia existente". *P.P.D. v. Gobernador I*, 139 D.P.R. 643, 675 (1995).

Al evaluar esta doctrina hay que concentrarse en "la relación existente entre los eventos pasados que dieron inicio al pleito y la adversidad presente". *U.P.R. v. Laborde Torres y otros I*, *supra*. Es decir, debemos evaluar los eventos anteriores, próximos y futuros, a fines de determinar si la controversia entre las partes sigue viva y subsiste con el tiempo. *Pres. del Senado*, 148 D.P.R. 737, 759 (1999). Este análisis es esencial para determinar la existencia de los requisitos constitucionales de justiciabilidad, especialmente cuando existen aspectos de la controversia que se tornan académicos pero persisten consecuencias colaterales de ésta que tienen vigencia y actualidad. Véase, R. Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico*, San Juan, Ed. C. Abo. P.R., 1986, Vol. 1, págs. 122-126.

Ahora bien, existen varias excepciones a la doctrina de academicidad. Estas operan cuando se plantea ante el tribunal (1) una cuestión recurrente o susceptible de volver a ocurrir; (2) cuando la situación de hechos ha sido cambiada por el demandado, pero no tiene visos de permanencia; (3) cuando subsisten consecuencias

colaterales que tienen vigencia y actualidad. *Angueira v. J.L.B.P.*, 150 D.P.R. 10, 19 (2000).

En el pasado resolvimos un caso donde se planteó una controversia análoga a la que hoy tenemos ante nos. En *Hons. Castro, Cabán v. Depto de Justicia*, 153 D.P.R. 302 (2001) este Tribunal se cuestionó si existían controversias colaterales importantes por resolver luego de que las partes transigieran un pleito ante el foro federal. Igual que en el caso de autos, la parte demandada en el pleito federal (asambleístas municipales) le solicitó al Departamento de Justicia que le brindara los beneficios de representación legal conforme al Art. 12 de la Ley Núm. 104, *supra*, y éste se negó a concedérselos. En ese caso, compareció el Procurador General y argumentó que el recurso no era académico porque "quedaba por decidirse si el Estado estaba obligado a **reembolsarle** a los peticionarios los honorarios de abogado y las costas en que incurrieron por razón de la referida litigación federal antes de ser transigido el pleito". (Énfasis en el original.) *Íd.*, págs. 313-314. Allí resolvimos que el Procurador General tenía razón porque existían consecuencias colaterales por atender. *Íd.*, pág. 314.

Al igual que en *Hons. Castro, Cabán v. Depto de Justicia*, *supra*, entendemos que el caso de autos no se ha tornado académico porque existen consecuencias colaterales por atender. Debemos resolver pues, si la recurrida tiene

que reembolsarle al Departamento de Justicia los gastos, costas y honorarios de abogado en que incurrió al proveerle, de forma preliminar, los beneficios de representación legal en el pleito federal.

Luego de haber superado el aspecto sobre la justiciabilidad de la controversia, a continuación discutiremos los méritos del caso.

**III**

El Departamento de Justicia expresa en su alegato que la decisión de la agencia está sustentada por el expediente administrativo, por lo que procedía que el Tribunal de Apelaciones le confiriera deferencia y la confirmara. Sostiene que no tenía que concederle a la parte recurrida una vista formal, según lo exigió en su Sentencia el foro apelativo intermedio, porque no hay un interés propietario que fuera a ser afectado. Señala que la ley y la reglamentación aplicable tampoco exigen ese requisito procesal y que la vista informal le permite al Departamento de Justicia atender de forma responsable las solicitudes que anualmente presentan miles de solicitantes. Entiende que la celebración de la vista informal que se le concedió a la recurrida es un requisito procesal válido para los casos de concesión o denegación del beneficio de representación legal porque en ella le garantizaron el mínimo irreductible de garantías

procesales que se han reconocido como justas y equitativas.

Aduce que la vista informal no es de carácter adversativa, por lo que el Departamento de Justicia no tenía que presentar prueba para sustentar su denegatoria al beneficio de representación legal. Afirma que el deber de la agencia se circunscribe a evaluar si el solicitante cumple con los requisitos que establece el Art. V del Reglamento sobre la Representación Legal y Pago de Sentencia bajo la Ley de Reclamaciones y Demandas contra el Estado, Reglamento Núm. 4071, en adelante, Reglamento, aprobado el 8 de septiembre de 1989. En ese tenor, señala que le correspondía a la recurrida mostrar causa por la cual no se le debía negar el beneficio de representación legal. Asimismo, expresa que la agencia no tiene el deber de determinar si la recurrida cometió los actos que se le imputaron en la Demanda federal, sino analizar si la solicitud de representación legal cumple con los requisitos establecidos en el Reglamento.

Por último alega que, contrario a lo intimado por el Tribunal de Apelaciones, sí le notificó de forma adecuada a la recurrida su intención de denegarle el beneficio de representación legal porque en la notificación se indicó la intención del Departamento de Justicia de negar el beneficio, se especificaron las razones en que se fundamentaba esa decisión y las disposiciones

reglamentarias en que se basaba. Ahora bien, argumenta, en la alternativa, que de entenderse que la notificación fue defectuosa, lo procedente es devolver el caso a la agencia para que se conceda el debido proceso y se realice una notificación nueva. Sostiene que la determinación de violación al debido proceso por razón de una notificación defectuosa no concede automáticamente derecho al beneficio, según lo intimó el Tribunal de Apelaciones.

*A contrario sensu*, la parte recurrida expone en su alegato que las conclusiones de hecho que hizo el Oficial Examinador en su informe son pro forma porque despachó sus declaraciones y la de su chofer con meras aseveraciones de que no le mereció credibilidad. Además, alega que el Oficial Examinador también descartó otras declaraciones juradas ofrecidas por ésta que la exculpaban.[16] Sostiene que, sorpresivamente, el Oficial Examinador le asignó valor probatorio a la Declaración Jurada de la señora Cordero Rodríguez y a las alegaciones vertidas en la Demanda. Lo anterior sin darle la oportunidad de confrontar y contrainterrogar a esta última en la vista administrativa. Por consiguiente, concluye que la prueba que obra en el expediente administrativo no es evidencia

---

[16] Sobre este particular es menester señalar que del Informe preparado por el Oficial Examinador no surge que la recurrida haya presentado en la vista informal declaraciones juradas de otras personas, salvo la de su chofer, que la exculpan de las acciones que se le imputaron en la Demanda. Tampoco surge esa información de la grabación de la vista informal. Por lo tanto, entendemos que estas no formaron parte del expediente administrativo, por lo que no se deben considerar para el análisis del caso de autos.

sustancial con la que una persona razonable concluiría que la recurrida ordenó eliminar del sistema los viajes de los usuarios que querían comparecer a deponer a las vistas de la Comisión.

La recurrida también aduce que la notificación enviada por el Departamento de Justicia, en la que se le negó el beneficio de representación legal, fue inadecuada porque no se realizó de conformidad con el Reglamento. En fin, alega que cumplió con todos los requisitos para que se le concedieran los beneficios de obtener representación legal.

**A.**

La Ley Núm. 9 de 26 de noviembre de 1975, 32 L.P.R.A. sec. 3085 *et seq.*, que enmendó la Ley Núm. 104, *supra*, establece que un funcionario o empleado de Gobierno de Puerto Rico que sea demandado en daños y perjuicios en su carácter personal por actos u omisiones incurridos dentro del marco de sus funciones que constituyan violaciones a los derechos civiles del demandante y que no tenga disponibles los beneficios de la Ley Núm. 104, *supra*, puede solicitar que el Estado le provea representación legal y pague la sentencia que en su día pueda recaer. Art. 12 de la Ley Núm. 104, *supra*.[17]    Por medio de este

---

[17] La Ley Núm. 9 de 26 de noviembre de 1975, 32 L.P.R.A. sec. 3085 *et seq.*, no sustituyó a la Ley Núm. 104 de 29 de junio de 1955, 32 L.P.R.A. 3077 *et seq.*, sino que la complementó. *García v. E.L.A.*, 146 D.P.R. 725, 736 (1998).

estatuto el Estado reconoció que existen instancias en las que funcionarios gubernamentales pueden ser demandados en su carácter personal, aun cuando las acciones que motiven la demanda se lleven a cabo en el estricto y legal cumplimiento de las obligaciones que le imponen las leyes que tienen el deber de administrar. Exposición de Motivos de la Ley Núm. 9, *supra*. Véase *García v. E.L.A.*, 146 D.P.R. 725, 737 (1998).

Consiente de esa realidad, a través de esta ley el Estado se impuso la obligación de asumir cualquier responsabilidad de carácter económico con motivo de indemnizaciones impuestas por un Tribunal con jurisdicción a cualquier funcionario o empleado público cuando esto suceda como corolario de una acción administrativa tomada de buena fe, dentro de las disposiciones legales vigentes y dentro del marco de sus funciones. *Íd.* "Con la adopción de esta medida se asume una responsabilidad ineludible para la protección de la integridad del servicio público". *Íd.*

Este Tribunal ha reconocido que "uno de los propósitos seguidos por el legislador al promulgar la Ley Núm. 9, *supra*, fue el proteger a los funcionarios o empleados públicos que son demandados en el foro federal en su capacidad personal". Esto puede ocurrir, por ejemplo, cuando los funcionarios o empleados públicos actúan so color de autoridad estatal y violan los derechos

civiles de una o varias personas. Véase 42 U.S.C. sec. 1983. En estos casos la Undécima Enmienda de la Constitución de Estados Unidos, Enm. XI, Const. EE. UU., L.P.R.A., ed. 2008, prohíbe que se demande a un estado en los tribunales federales. *Hons. Castro. Cabán v. Depto. de Justicia*, *supra*, pág. 309. Esta protección constitucional se ha hecho extensiva a Puerto Rico. *Font v. Dapena Yordan*, 763 F.Supp. 680 (D. P.R. 1991). Por lo tanto, "si la Ley Núm. 9, *supra*, no existiera, los funcionarios o empleados públicos estarían desprovistos de toda protección cuando son demandados en los foros federales por actuaciones dentro del marco de sus funciones oficiales".[18] *Hons. Castro. Cabán v. Depto. de Justicia*, *supra*, pág. 309.

El Art. 12 de la Ley Núm. 104, *supra*, establece que para que un funcionario o empleado público pueda obtener los beneficios de representación legal y, posteriormente, el pago de la sentencia: a) debe ser demandado en daños y perjuicios en su carácter personal, y; b) la causa de acción se debe fundamentar en alegadas violaciones a los derechos civiles del demandante debido a actos u omisiones incurridos de buena fe en el curso de su trabajo y dentro

---

[18] Precisamente, esta ley surge para llenar el vacio que existía en cuanto a la protección que se le ofrecía a los funcionarios o empleados públicos, al desarrollarse la práctica de demandar a estos en el foro federal donde el Estado no puede ser demandado. *García v. E.L.A.*, *supra*, pág. 737.

del marco de sus funciones. *Hons. Castro, Cabán v. Depto. de Justicia*, *supra*, pág. 310. Es decir, las acciones y omisiones del demandante deben estar motivadas por un estado anímico que mueve a una persona a actuar o abstenerse de actuar sin que medie malicia, irrazonabilidad, negligencia inexcusable, capricho, arbitrariedad o intención de causar daño a otra persona. Art. IV (C) del Reglamento. Véase, Opinión del Secretario de Justicia, Núm. 29, 1989, pág. 202.

Por su parte, el Art. 15 de la Ley Núm. 104, 32 L.P.R.A. sec. 3088, excluye expresamente del beneficio de representación legal y de pago de sentencia los actos u omisiones de un funcionario, ex funcionario, empleado o ex empleado cuando: constituyan delito, ocurran fuera del marco de sus funciones oficiales, medie negligencia inexcusable y cuando jurisprudencialmente se haya establecido un estado de derecho diferente mediante sentencia final y firme. Por lo tanto, los beneficios de representación legal y pago de sentencia no se concederán a aquellos actos u omisiones de funcionarios o empleados que constituyan delito intencional o mala fe. Véase, Opinión del Secretario de Justicia, Núm. 2, 1988, pág. 8.

Los criterios estatuidos en los Arts. 12 y 15 de la Ley Núm. 104, *supra*, fueron aglutinados en el Art. V del

Reglamento.[19] Este artículo desglosa las condiciones con las que debe cumplir un solicitante para recibir los beneficios de representación legal:

A) Sea demandado en daños y perjuicios en su carácter personal.

B) La causa de acción se fundamente en alegadas violaciones a los derechos civiles de la parte demandante debido a actos u omisiones incurridos de buena fe.

C) Los hechos que dan lugar a la demanda ocurren en el curso del trabajo del funcionario y dentro del marco de sus funciones.

D) Los hechos que dan lugar a la demanda no constituyen delito.

E) Los hechos que dan lugar a la demanda no constituyen negligencia inexcusable.

F) Los hechos que dan lugar a la demanda no sean contrarios a un estado de derecho establecido jurisprudencialmente mediante sentencia final y firme. Art. V del Reglamento.

Al interpretar estas disposiciones señalamos que el solicitante debe satisfacer cada uno de estos requisitos para poder recibir los beneficios de representación legal. *Hons. Castro, Cabán v. Depto. de Justicia*, *supra*, pág. 310. Es decir, no basta con observar algunas de las condiciones esbozadas, sino que tienen que concurrir todas.

---

[19] Debemos señalar que el Reglamento sobre Representación Legal y Pago de Sentencia bajo la Ley de Reclamaciones y Demandas contra el Estado, Reglamento Núm. 4071, aprobado el 8 de septiembre de 1989, fue sustituido por el Reglamento Núm. 7622, de 3 de diciembre de 2008. Sin embargo, éste no es de aplicación al caso de autos porque entró en vigor luego de que culminara el proceso de petición de representación legal ante el Departamento de Justicia iniciado por la recurrida.

En el caso de autos el Secretario de Justicia decidió denegar la solicitud que le hizo la recurrida para recibir los beneficios de representación legal por entender que las actuaciones que se le imputaron a ésta en el caso *Orria-Medina et als. v. Autoridad Metropolitana de Autobuses et als.*, *supra*, eran indicativas de conducta intencional. Posteriormente, a petición de la recurrida, se celebró una vista informal en la que se le permitió declarar y presentar prueba para mostrar causa por la cual no se le debían denegar los beneficios de representación legal. Finalizada la vista, el Oficial Examinador emitió un Informe en el que concluyó que las acciones que se le imputaban a la recurrida en el pleito federal eran indicativas de conducta intencional y/o constitutivas de delito. Señaló que las directrices impartidas por la recurrida --ordenando la cancelación de unos viajes que tenían programados ciertos usuarios del Programa Llame y Viaje de la AMA para ir la Asamblea Legislativa-- no constituían actos de buena fe relacionados a las funciones inherentes del puesto que ésta ocupaba. Por lo tanto, recomendó que no se le concedieran los beneficios de representación legal. Finalmente, el Secretario de Justicia acogió la recomendación del Oficial Examinador y, nuevamente, denegó la solicitud presentada por la recurrida.

De lo anterior surge, de forma meridiana, que el fundamento en ley para denegarle los beneficios de representación legal a la recurrida fue la alegada conducta intencional y de mala fe desplegada por ésta al cancelar los viajes que tenían pautados ciertos usuarios del Programa Llame y Viaje. Según surge de las alegaciones de la Demanda incoada en su contra en el caso *Orria-Medina et als. v. Autoridad Metropolitana de Autobuses et als.*, *supra*, los usuarios iban a ir a la Asamblea Legislativa a oponerse al aumento fijado en las tarifas del Programa Llame y Viaje ofrecido por la AMA, debido a lo cual, la recurrida ordenó la cancelación de los viajes que tenían programados. *Prima facie*, esas alegaciones le imputaron a la recurrida una conducta intencional ajena a la buena fe y a sus funciones como Presidenta de la AMA.

Ahora bien, aquí no está en controversia si la alegada conducta imputada está excluida de los beneficios de representación legal. De hecho, la parte recurrida no obsta esa exclusión. Más bien, niega haber ordenado la cancelación de los viajes de los usuarios de la AMA. Su alegación principal es que la determinación del Departamento de Justicia, de no concederle los beneficios de representación legal, no estuvo avalada en evidencia sustancial. Señala como razón para ello, que no se le permitió confrontar y contrainterrogar a la señora Cordero

Rodríguez y que la notificación que recibió no fue adecuada.

Por lo tanto, el *quid* que nos plantea este caso es si la denegatoria de los beneficios de representación legal por parte del Departamento de Justicia estuvo justificada a la luz del procedimiento discurrido.

**B.**

La Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2101 *et seq.*, estableció un cuerpo de reglas mínimas para proveer uniformidad al proceso decisional de las agencias públicas en nuestra jurisdicción. *Baerga v. F.S.E.*, 132 D.P.R. 524, 534 (1993). Esto, con el propósito de alentar la solución informal de las controversias administrativas ante las agencias. Véase, Sec. 1.2 de la Ley Núm. 170, *supra,* 3 L.P.R.A. sec. 2101. Para viabilizar ese objetivo, el legislador autorizó a las agencias a promulgar reglas y procedimientos que permitan la solución informal sin menoscabar los derechos garantizados por la ley. *Íd.*

La citada Ley Núm. 170 es aplicable a "todos los procedimientos administrativos conducidos ante todas las agencias que no están expresamente exceptuados por el mismo". Sec. 1.4 de la Ley Núm. 170, *supra,* 3 L.P.R.A. sec. 2103.

En el caso de autos, el proceso de concesión o denegación de los beneficios de representación legal que realiza el Departamento de Justicia no está exceptuado de la aplicación de la Ley Núm. 170, *supra,* porque en éste no se ejercen funciones investigativas y de procesamiento criminal. *Íd.*

En cuanto a los procedimientos adjudicativos,[20] hemos señalado que, como regla general, cuando una agencia tiene que resolver una controversia de manera formal, tiene que hacerlo de conformidad con lo dispuesto en la Ley Núm. 170, *supra; Ríos Colón v. F.S.E.,* 139 D.P.R. 167, 175 (1995); *Pagán Ramos v. F.S.E.,* 129 D.P.R. 888, 903 (1992); *Hernández v. Golden Tower Dev. Corp.,* 125 D.P.R. 744 (1990). Véase, Sec. 3.1 de la Ley Núm. 170, 3 L.P.R.A. sec. 2151. Asimismo, toda agencia cubierta por la ley tiene que cumplir con el procedimiento formal de adjudicación. Véase, D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed., Colombia, Ed. Forum, 2001, sec. 4.1, pág. 139.

Empero, la Ley Núm. 170, *supra,* excluye de su aplicación los procedimientos adjudicativos informales siguientes: la adjudicación de subastas, la concesión de

---

[20] La adjudicación es definida por la Sec. 1.3 de la Ley Núm. 170 de 12 de agosto de 1966, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, como "el pronunciamiento mediante el cual una agencia determina los derechos, obligaciones o privilegios que correspondan a una parte". 3 L.P.R.A. sec. 2102(b).

préstamos, becas, subsidios, subvenciones, emisiones de deuda, inversiones de capital, reconocimiento o permiso, y todos los trámites o etapas del proceso de evaluación de documentos ambientales requeridos por la Ley Sobre Política Pública Ambiental y el Reglamento aprobado al amparo de ésta. Ley Núm. 170, *supra*, 3 L.P.R.A. sec. 2151. A su vez, por vía jurisprudencial resolvimos que la vista informal previa a la destitución de un empleado de carrera que garantiza el debido proceso de ley, en su modalidad procesal, no tenía que cumplir con el proceso formal de la Ley Núm. 170, *supra*, debido a que ésta es el primer peldaño procesal del procedimiento adjudicativo que termina con una vista formal posterior al despido. *Véase*, *Marrero Caratini v. Rodríguez Rodríguez*, 138 D.P.R. 215 (1995).

Por su parte, la Ley Núm. 170, *supra*, dispone que en los procedimientos administrativos formales se deberán salvaguardar los derechos que siguen: 1) el derecho a una notificación oportuna de los cargos, querellas o reclamos en contra de una parte; 2) el derecho a presentar evidencia; 3) el derecho a una adjudicación imparcial, y; 4) el derecho a que la decisión sea basada en el expediente. Sec. 3.1 de la Ley Núm. 170, *supra*.[21] A su vez,

---

[21] De esta manera, la Ley Núm. 170, *supra*, incorpora las garantías mínimas del debido proceso de ley a los procedimientos adjudicativos. Ello debido a que mediante estos procedimientos se pueden ver afectados intereses propietarios o libertarios de los participantes. *Com. Seg. v. Real Legacy Insurance*, res. el 21 de julio de 2010, 179

la Ley Núm. 170, *supra*, reconoce el derecho de toda parte a estar representado por un abogado y a que se emita una resolución con determinaciones de hecho y conclusiones de derecho. Secs. 3.9 y 3.15 de la Ley Núm. 170, *supra*, 3 L.P.R.A. secs. 2159(b) y 2164. Por lo tanto, estas garantías deben ser sumadas a las comprendidas en la Sec. 3.1 de la Ley Núm. 170, *supra*, 3 L.P.R.A. sec. 2151. Véase, D. Fernández Quiñones, *op. cit.*, sec. 4.2, pág. 140.

Además, hemos reconocido que la naturaleza informal o sumaria de un proceso adjudicativo no puede ser un obstáculo para que se le garanticen a las partes afectadas el mínimo irreductible de garantías procesales reconocidas como justas y equitativas.[22] *Baerga Rodríguez v. F.S.E.*, *supra*, pág. 538. Específicamente, hay que concederle a la parte afectada una notificación adecuada, la oportunidad de confrontarse con la prueba de la otra parte, la de presentar la suya propia, la de reconsiderar la

---

D.P.R. ___ (2010), 2010 T.S.P.R. 142, 2010 J.T.S. 151; *Álamo Romero v. Adm. de Corrección*, res. el 15 de enero de 2009, 175 D.P.R. ___ (2009), 2009 T.S.P.R. 6, 2009 J.T.S. 9.

[22] Es preciso apuntar que en el caso de *Marrero Caratini v. Rodríguez Rodríguez*, 138 D.P.R. 215, 222 (1995), reconocimos que en la vista informal previa a la destitución de un empleado de carrera, lo único que se le debe proveer a éste es: 1) una notificación por escrito de los cargos administrativos en su contra; 2) una descripción de la prueba que posee el patrono, y; 3) una oportunidad para que el empleado exprese su versión de lo sucedido. Resolvimos de esa manera porque el empleado, en caso de que sea destituido, tendrá derecho a que se celebre una vista formal donde se le garanticen los derechos reconocidos por la LPAU en los procedimientos adjudicativos. Por lo tanto, por vía de excepción, en esta vista informal no se le tienen que garantizar al empleado los derechos consignados en la LPAU.

determinación administrativa y la de revisar judicialmente dicha determinación. *Íd.* Véanse, *Almonte et al. v. Brito*, 156 D.P.R. 475, 482 (2002); *López Vives v. Policía de P.R.*, 118 D.P.R. 219, 231 (1987).[23]

Por otro lado, aunque la Ley Núm. 170, *supra*, no dispone específicamente que existe un derecho a una audiencia, el disfrute de estos derechos solamente es asequible a través de la celebración de ésta. D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed., Colombia, Ed. Forum, 2001, sec. 6.2, pág. 309. Cónsono con lo anterior, hemos resuelto que aun cuando una agencia provea para que se celebre una vista informal, el carácter de informalidad no puede obliterar las garantías mínimas del proceso justo y equitativo. *Baerga Rodríguez v. F.S.E.*, *supra*, pág. 535. Por eso, la política pública de la Ley Núm. 170, *supra*, de alentar procedimientos informales para solucionar controversias, tiene que hacerse sin menoscabar los derechos reconocidos a las partes por la propia ley. *Íd.*

Hay que puntualizar que la Ley Núm. 170, *supra*, no le impone a las agencias seguir un formato especial para la audiencia. Sin embargo, el funcionario que la presida

---

[23] De hecho, la propia parte peticionaria señala en su alegato que le garantizó, a través del Reglamento, estos derechos a la parte recurrida. Véase, Alegato de la parte peticionaria, págs. 24 y 26. Por lo tanto, aquí no existe controversia sobre el mínimo de derechos que se le debían garantizar a la recurrida. El punto a resolver es si realmente se le honraron esos derechos.

dentro de un marco de informalidad, ofrecerá a todas las partes la extensión necesaria para una divulgación completa de todos los hechos y cuestiones en discusión, la oportunidad de responder, presentar evidencia y argumentar, conducir contrainterrogatorio y someter evidencia en refutación. Art. 3.13(b) de la Ley Núm. 170, *supra*, 3 L.P.R.A. sec. 2163.

Para aumentar la eficacia y asegurar la uniformidad en la adjudicación de controversias, las agencias deberán adoptar un reglamento que regule estos procedimientos. 3 L.P.R.A. sec. 2152. Véase, *Com. Seg. v. Real Legacy Insurance*, *supra*. De haberse reglamentado, sus disposiciones no podrán contravenir las de la Ley Núm. 170, *supra*. *Íd.* En consecuencia, "todo reglamento promulgado por la agencia y todo funcionario que presida la vista están obligados por lo dispuesto en la [LPAU]". Fernández Quiñones, *op. cit.*, sec. 4.2, pág. 156. Por eso, el funcionario que presida la vista le tiene que garantizar a las partes los derechos reconocidos por esta ley.

A la luz de lo anterior, colegimos que, con independencia de la naturaleza del proceso de concesión de los beneficios de representación legal, el Departamento de Justicia tiene la obligación de brindarles a los solicitantes de los beneficios de representación legal, las garantías procesales mínimas que la Ley Núm. 170,

*supra*, reconoce que se le deben garantizar a las partes en la adjudicación formal de una controversia. Véase, *Baerga Rodríguez v. F.S.E.*, *supra*, pág. 536. Veamos pues, si así ocurrió.

**IV.**

El Departamento de Justicia promulgó el Reglamento 4071 de conformidad con el Art. 18 de la Ley Núm. 104, 32 L.P.R.A. sec. 3091. Ahí se dispone el procedimiento que se tiene que seguir para solicitar los beneficios de representación legal al Secretario de Justicia bajo la Ley Núm. 9, *supra*. *Ortiz et al. v. E.L.A.*, 158 D.P.R. 62, 72 (2002). Con relación a las normas de denegación de beneficios, el Secretario debe notificar su intención de denegar los beneficios al solicitante e indicarle, que tiene derecho a pedir por escrito, dentro del término de diez (10) días, que se celebre una vista informal para mostrar causa por la cual no deban denegarse los beneficios. Art. XII (A)(2) del Reglamento. En su notificación, el Secretario deberá incluir los hechos y fundamentos que justifican la determinación y las disposiciones legales o reglamentarias presuntamente infringidas. Art. XII (A)(1) del Reglamento.

Si el solicitante pide la celebración de una vista informal, el Secretario designará un Oficial Examinador, y éste a su vez, le notificará al solicitante, *inter alia*, los hechos que justifican la denegación de los beneficios,

y las disposiciones legales o reglamentarias presuntamente infringidas. Art. XII (B)(4) del Reglamento. En la vista informal que se celebre, se dará oportunidad al solicitante para que muestre causa por la cual no se deban denegar los beneficios de representación legal. Art. XII (C) del Reglamento. El Oficial Examinador llevará récord de las incidencias de la vista y someterá un Informe que contendrá una relación de la prueba presentada y sus conclusiones y recomendaciones. *Íd.* El Secretario emitirá la decisión final por escrito, y se la notificará al solicitante mediante correo certificado con acuse de recibo o personalmente. *Íd.*

Dentro de los noventa (90) días de celebrada la vista, el Secretario deberá emitir la Resolución final y si el solicitante se encuentra inconforme, deberá presentar reconsideración de dicha determinación. Art. XII (E) y Art. XIII del Reglamento. La Resolución final deberá incluir determinaciones de hechos y conclusiones de derecho. Art. VIII (G) del Reglamento. Finalmente, el solicitante que haya agotado los remedios administrativos que se establecen en la Ley y el Reglamento, incluyendo el trámite de reconsideración, podrá interponer recurso de revisión judicial de la determinación final del Secretario. Art. XIV del Reglamento.

Como ya expresamos, el Departamento de Justicia venía obligado a salvaguardarle a la recurrida el mínimo de

derechos que reconoce la Ley Núm. 170, *supra*, y la jurisprudencia para los procedimientos adjudicativos. En esencia, la recurrida señala que no recibió una notificación adecuada y que no se le permitió confrontar la prueba utilizada en su contra. Por ende, arguye que las determinaciones de hecho no están sostenidas en evidencia sustancial. Por su parte, la parte peticionaria aduce que sí le notificó de forma adecuada a la recurrida su intención de denegarle los beneficios de representación legal[24] y que también le garantizó el derecho a la confrontación. Por tal razón, es su contención que las determinaciones de hecho están sostenidas en evidencia sustancial.

## A

En cuanto a la notificación, la recurrida recibió una carta en la que el Secretario de Justicia le informó su intención de denegarle los beneficios de representación legal. Según el Reglamento esa notificación debía incluir los hechos y fundamentos que justificaron la determinación y las disposiciones legales o reglamentarias presuntamente infringidas. Art. XII (A)(1) del Reglamento. Sin embargo, en esa misiva no se expusieron los hechos y fundamentos que justificaron la determinación. Véase, Apéndice de la

---

[24] El Departamento de Justicia argumenta, en la alternativa, que de entenderse que la notificación fue defectuosa, lo procedente es devolver el caso a la agencia para que se conceda el debido proceso y se realice una notificación nueva.

Petición de *Certiorari*, pág. 29. Tampoco se incluyeron las disposiciones legales o reglamentarias presuntamente infringidas. Véase, Apéndice de la Petición de *Certiorari*, pág. 29.[25] Lo mismo ocurrió con la segunda carta que le remitió el Oficial Examinador a la recurrida en la que le notificó la celebración de la vista informal. Allí, según el Reglamento, también se debían incluir los hechos que justificaban la denegación y las disposiciones legales o reglamentarias presuntamente infringidas por ésta. Véase, Art. XII(B)(4) del Reglamento.

Cabe señalar que el Art. XII (A)(1), (B)(4) del Reglamento es análogo a la Sec. 3.9(d) de la Ley Núm. 170, *supra*, 3 L.P.R.A. sec. 2159. Al interpretar esta sección, el Profesor Fernández Quiñones señala que el criterio rector para determinar el cumplimiento de la especificación de los hechos y las disposiciones presuntamente infringidas, "es si la notificación razonablemente le permite preparar su caso". D. Fernández Quiñones, *op. cit.*, sec. 4.2, pág. 150. Lo que hay que verificar es si la persona conoce la conducta ilegal que se le imputa y tiene una oportunidad justa y adecuada de presentar su defensa". *Íd.*

Ciertamente, de lo anterior podemos concluir que el Departamento de Justicia no siguió el procedimiento de

---

[25] Aunque el Secretario de Justicia citó parte del Art. 12 de la Ley Núm. 104, *supra*, 32 L.P.R.A. sec. 3085, no especificó las disposiciones legales o reglamentarias presuntamente infringidas por la peticionaria.

notificación establecido en el Reglamento. Ahora bien, en ningún momento, durante el proceso ante dicha agencia, la recurrida objetó las notificaciones que se le cursaron. Ni siquiera lo hizo en su alegato ante el Tribunal de Apelaciones. Véase, Apéndice de la Petición de *Certiorari*, págs. 1-13. *A contrario sensu*, ésta acudió a la vista informal y presentó prueba a su favor relacionada a las actuaciones intencionales que se le habían imputado en la Demanda. Es decir, se sometió al proceso voluntariamente.

Ello es indicativo de que la recurrida en ningún momento demostró desconocer la conducta ilegal que se le imputó en la demanda y por la cual se le denegaron los beneficios de representación legal. Además, entendemos que su omisión en objetar los defectos de ambas notificaciones y de que se haya sometido al proceso, es suficiente para concluir que la recurrida renunció[26] a su derecho a recibir una notificación adecuada conforme al Reglamento y a la Ley Núm. 170, *supra*.[27] Véanse: *Qume Caribe, Inc. v. Srio de*

---

[26] La renuncia, en derecho, equivale a dejar de alegar o defender voluntariamente un derecho que se tiene.

[27] El Art. 4 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 4, establece en su segunda oración que: "Los derechos concedidos por las leyes son renunciables, a no ser esta renuncia contraria a la ley, el interés o el orden público, o en perjuicio de tercero". Para que se materialice la renuncia, sea expresa o tácita, ésta debe ser clara, terminante, explícita e inequívoca. *Eastern Sands, Inc. v. Roig Comm. Bank*, 140 D.P.R. 703, 719-720 (1996) y casos allí citados. Además, la renuncia no se presume sino que es de estricta interpretación. *Id.* Entendemos que la falta de objeción por parte de la recurrida durante el proceso ante el Departamento de Justicia y, posteriormente, ante el Tribunal de Apelaciones, denota, tácitamente, su renuncia al derecho a ser notificada conforme al Reglamento y la Ley Núm. 170, *supra*.

*Hacienda*, 153 D.P.R. 700 (2001)[28]; *Meléndez Santana v. Comisión Industrial*, 109 D.P.R. 393 (1980)[29]. Como ya hemos indicado, "el propósito principal de una notificación adecuada queda plenamente satisfecho si la parte se somete a los procedimientos administrativos voluntariamente y con pleno conocimiento de lo que allí se va a dilucidar". *Qume Caribe, Inc. v. Srio de Hacienda*, *supra*, pág. 718.

No albergamos ninguna duda de que en este caso la recurrida, al solicitar la vista informal luego de recibir la primera notificación defectuosa, quiso continuar con el procedimiento administrativo. Su intención de someterse al proceso y su conocimiento sobre lo que allí se iba a dilucidar, quedó aún más evidenciada cuando, luego de la segunda notificación, la recurrida compareció a la vista informal y presentó prueba que refutaba los actos intencionales que le imputaron en la Demanda. Por ende, concluimos que aunque las notificaciones que recibió la

---

[28] En *Qume Caribe, Inc. v. Srio de Hacienda*, 153 D.P.R. 700, 712 (2001), apuntamos que "una persona puede someterse al procedimiento administrativo aunque la notificación de la agencia haya sido deficiente…". El tribunal entendió que la parte (Qume) renunció a su derecho a recibir una notificación adecuada al someterse al proceso sin impugnar las alegadas deficiencias de la notificación. *Íd.*, págs. 711-719.

[29] En *Meléndez Santana v. Comisión Industrial*, 109 D.P.R. 393, 394 (1980), señalamos que la falta de notificación para una vista médica se puede impugnar pero ese derecho es renunciable. En ese caso, se celebró una vista médica a una obrera por razón de un accidente sufrido en el trabajo. *Íd.*, págs. 393-394. Sin embargo, la Comisión Industrial no le notificó a la Corporación del Fondo del Seguro del Estado la celebración de la vista. *Íd.*, pág. 394. Allí concluimos que el Fondo renunció a su derecho a ser notificado. *Íd.* Además, señalamos que éste nunca puso en condiciones al tribunal de que no hubo tal renuncia. *Íd.* De la misma manera, la recurrida en el caso de autos no nos ha puesto en condición de concluir que no hubo una renuncia a su derecho a recibir una notificación conforme al Reglamento y a la Ley Núm. 170, *supra*.

recurrida fueron defectuosas, ésta renunció de forma clara, terminante, explícita e inequívoca a su derecho recibir notificaciones adecuadas, al someterse al procedimiento administrativo sin impugnar los defectos.

**B.**

Por otro lado, es un hecho incontrovertido que el Departamento de Justicia celebró una vista informal a instancia de la parte recurrida. En la vista la recurrida se sentó a declarar y también ofreció una Declaración Jurada de su chofer, ambos negando los hechos imputados en la Demanda. A la luz de la prueba presentada, el Oficial Examinador rindió un Informe recomendando la denegación de los beneficios de representación legal. En éste señaló que no le merecieron credibilidad el testimonio de la recurrida y el de su chofer.

Por el contrario, el Oficial Examinador le dio crédito a las declaraciones --contenidas en las transcripciones que obraban en el expediente-- que realizó la señora Cordero Rodríguez en unas vistas públicas ante la Asamblea Legislativa, en las que señaló que la recurrida fue quien la instruyó a que ordenara la cancelación de los viajes de unos usuarios del Programa Llame y Viaje que querían comparecer a deponer a unas vistas. En consecuencia, concluyó que las órdenes impartidas por la recurrida no eran actos u omisiones de buena fe y dentro del marco de sus funciones.

La recurrida alega que las determinaciones de hecho que hizo el Oficial Examinador en el Informe son objetables porque no tuvo la oportunidad de contrainterrogar y confrontar a la señora Cordero Rodríguez. Por su parte, la parte peticionaria admite en su alegato que la recurrida tenía derecho a confrontarse con la prueba. Alegato de la parte peticionaria, pág. 26. Empero, alega que las transcripciones que el Oficial Examinador evaluó de las vistas celebradas ante la Cámara de Representantes, en la que surge el testimonio que involucra a la recurrida con los hechos intencionales y de mala fe que se le imputan, fueron provistas por la propia recurrida. *Íd.*, págs. 29 y 32. Es decir, que la transcripción fue ofrecida en evidencia por la propia parte recurrida. Ésta no niega esa contención.

Del Informe sometido por el Oficial Examinador al Secretario de Justicia, no se desprende que la recurrida haya solicitado contrainterrogar y confrontar a la señora Cordero Rodríguez durante la vista informal. *A fortiori*, de la grabación de la vista informal surge que las transcripciones evaluadas por el Oficial Examinador fueron provistas por la parte recurrida. De hecho la recurrida sabía, desde que se presentó la Demanda en su contra en el foro federal, cuáles eran las imputaciones que se le hacían. Como bien relatamos en la exposición de los hechos del caso, en la Demanda se alegó que la recurrida presionó

a la señora Cordero Rodríguez para que ésta borrara o eliminara las reservaciones de ciertos usuarios del Programa Llame y Viaje:

> Trying to minimize or abscom [sic] criticism of the program, codefendand [sic] Torres-Santiago pressured then-director of the program, Mrs. Maria Cordero-Rodríguez, to make those reservations "disappear". Torres-Santiago specifically indicated that she did not want those customers to attend the hearing to express their complaints Torres Santiago told Ms. Cordero-Rodríguez something like "these [people] want to speak badly about us and they expect us to transport them there". Apéndice de la Petición de *Certiorari*, pág. 66.

Por consiguiente, es forzoso colegir que desde antes que se celebrara la vista informal, la recurrida sabía la conducta que se le imputaba y quién se la imputaba, por lo que pudo haberle solicitado al Oficial Examinador que le garantizara ese derecho durante la vista informal. Además, al presentar las transcripciones en la vista, sabía o debía saber que éstas podían ser consideradas por el Oficial Examinador, tal y como ocurrió. No fue hasta que el Oficial Examinador rindió el Informe, que la recurrida, cuando vio que no le favoreció, se quejó de que no pudo contrainterrogar ni confrontar a la señora Cordero Rodríguez.

Nos parece que la reclamación que hace la recurrida, además de ser extemporánea, encierra una profunda contradicción. Por un lado, ofrece las transcripciones que contienen las declaraciones de la señora Cordero

Rodríguez, y por otro lado se queja de que no pudo contrainterrogarla. En otras palabras, quiere contrainterrogar a la autora de las declaraciones que ella misma ofreció al Oficial Examinador. Queda claro pues, que la recurrida renunció de forma clara, terminante, explícita e inequívoca[30] a su derecho a contrainterrogar y confrontar a la señora Cordero Rodríguez.[31] Su renuncia no pudo haber sido más elocuente.

## C.

Para finiquitar, debemos analizar si las determinaciones de hecho que hizo el Oficial Examinador fueron razonables. Asiduamente hemos sostenido que las decisiones de los organismos administrativos merecen la mayor deferencia judicial. *Asoc. Fcias. v. Caribe Specialty et al. II*, res. el 23 de septiembre de 2010, 179 D.P.R. ___ (2010), 2010 T.S.P.R. 204, 2010 J.T.S. 213; *Otero v. Toyota*, 163 D.P.R. 716, 727 (2005). Esto debido a que son los organismos administrativos los que cuentan con el expertise y el conocimiento especializado sobre los

---

[30] Véase, *Eastern Sands, Inc. v. Roig Comm. Bank*, *supra*, págs. 719-720 (1996).

[31] La renuncia al derecho a contrainterrogar no es ajena al contexto administrativo. Así por ejemplo, el Tribunal Supremo de Estados Unidos resolvió en *Richardson v. Perales*, 402 U.S. 389, 404-405 (1971) que la inacción del reclamante de requerir citaciones para que comparecieran los facultativos que emitieron certificados médicos le impidió quejarse de que se le había negado el derecho a la confrontación y al contrainterrogatorio. Véanse además: *School Comm. v. Massachusetts Comm´n Against Discrimination*, 423 Mass. 7, 15-16 (1996); *Gray v. Adduci*, 73 N.Y.2d 741, 742-743 (1988); *Colorado Dep´t Revenue, Motor Vehicle Div. v. Kirke*, 743 P.2d 16, 21-22 (Colo. 1987).

asuntos que por ley se les han delegado. *Asoc. Fcias. v. Caribe Specialty et al. II*, *supra*; *JP Plaza Santa Isabel v. Cordero Badillo*, res. el 14 de octubre de 2009, 177 D.P.R. ___ (2009), 2009 T.S.P.R. 160, 2009 J.T.S. 163. Por eso, las decisiones de las agencias administrativas están cobijadas bajo una presunción de regularidad y corrección. *P.C.M.E. v. Junta de Calidad Ambiental*, 166 D.P.R. 599, 616 (2005); *Misión Ind. P.R. v. J.P.*, 146 D.P.R. 64, 131 (1998).

La Sec. 4.5 de la Ley Núm. 170, *supra*, 3 L.P.R.A. sec. 2175, establece los parámetros de la revisión judicial de decisiones administrativas. Según esta disposición, las determinaciones de hecho de una agencia se sostendrán si se basan en evidencia sustancial que obre en el expediente administrativo. *Íd.*; *JP Plaza Santa Isabel v. Cordero Badillo*, *supra*. La evidencia sustancial, a su vez, es aquella relevante que una mente razonada podría entender adecuada para sostener una conclusión. *Rebollo v. Yiyi Motors*, 161 D.P.R. 69, 76-77 (2004).

El criterio que debe utilizar un tribunal al revisar las determinaciones e interpretaciones de una agencia es el de razonabilidad. *Íd.*, pág. 76. A tales efectos, las determinaciones de hecho de una agencia solamente podrán revocarse cuando resulten ser irrazonables, arbitrarias o ilegales. *Fuertes y otros v. A.R.Pe.*, 134 D.P.R. 947, 953 (1993).

Por su parte, las conclusiones de derecho de las agencias administrativas pueden revisarse en todos sus aspectos por el tribunal. Sec. 4.5 de la Ley Núm. 170, *supra,* 3 L.P.R.A. sec. 2175; *JP Plaza Santa Isabel v. Cordero Badillo*, *supra*. No obstante, los tribunales no pueden descartar libremente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el suyo propio. *Martinez v. Rosado*, 165 D.P.R. 582, 589 (2005); *P.R.T.C. v. J. Reg. Tel. de P.R.*, 151 D.P.R. 269, 282 (2000). Igualmente, merece gran deferencia y respeto la interpretación razonable de un estatuto que hace el organismo que lo administra y del cual es responsable. *Martínez v. Rosado*, *supra*, pág. 589. Aun en casos marginales o dudosos en que la interpretación de la agencia no sea la única razonable, la determinación de la agencia merece deferencia sustancial. *De Jesús v. Depto. Servicios Sociales*, 123 D.P.R. 407, 417-418 (1989). Además, esta interpretación debe ajustarse a la finalidad principal de la ley y de la política pública que la inspiran. *Com. Seguros P.R. v. Gen. Accident Ins. Co.*, 132 D.P.R. 543, 552-553 (1993).

En este caso el Oficial Examinador tuvo ante sí el testimonio de la recurrida, la Declaración Jurada de su chofer y las transcripciones de las vistas públicas ante

la Asamblea Legislativa que la propia recurrida presentó.[32] Luego de aquilatar la prueba vertida redactó un Informe con determinaciones de hecho y conclusiones de derecho. En específico, señaló que la señora Cordero Rodríguez ordenó la cancelación de ciertos viajes a la Asamblea Legislativa solicitados y confirmados por ciertos usuarios, luego de recibir una orden de la recurrida para que así lo hiciera. Véase, Apéndice de la Petición de *Certiorari*, pág. 22. Finalmente, concluyó que la conducta realizada por la recurrida era intencional, ajena a la buena fe y al marco de sus funciones, por lo que recomendó denegar los beneficios de representación legal. No creemos que esa determinación de hecho sea irrazonable, arbitraria o ilegal a la luz de la prueba que tuvo ante sí el Oficial Examinador.

La recurrida cuestiona el hecho de que el Oficial Examinador le dio más peso a las declaraciones de la señora Cordero Rodríguez, según contenida en las transcripciones, que a su testimonio. Ello, fundamentándose en que las primeras son prueba de referencia. Nuevamente, el planteamiento de la recurrida es totalmente antagónico. Esto porque cuestiona el que el Oficial Examinador haya considerado y le haya dado más

---

[32] Aunque en el Informe preparado por el Oficial Examinador se desglosan otros documentos, una mera lectura del Informe revela que el Oficial Examinador basó su determinación en la apreciación del testimonio de la recurrida, la Declaración Jurada de su chofer y en las declaraciones que hizo la señora Cordero Rodríguez ante la Asamblea Legislativa, según recogidas en las transcripciones de las vistas públicas ante ese Cuerpo.

peso a las transcripciones que ella misma ofreció en evidencia.

Además, en nuestra jurisdicción es norma conocida que en los procedimientos administrativos no aplican las Reglas de Evidencia. Véase, Sec. 3.13(e) de la Ley Núm. 170, *supra,* 3 L.P.R.A. sec. 2163. Sobre este extremo hemos señalado que el propósito fundamental de los procesos adjudicativos es la búsqueda de la verdad y la justicia. *Otero v. Toyota*, *supra*. En ese tenor "[l]as reglas procesales y en particular las de evidencia, persiguen viabilizar este propósito; no obstaculizarlo". *Íd.; J.R.T. v. Aut. Comunicaciones*, 110 D.P.R. 879, 884 (1981). El que las Reglas de Evidencia no apliquen a los procesos administrativos persigue "que los justo impere sin las trabas procesales de los tribunales de justicia". *Martínez v. Tribunal Superior*, 83 D.P.R. 717, 720 (1961). Esto permite que el juzgador de hechos conozca toda la información pertinente para dilucidar la controversia que tiene ante sí. *Otero v. Toyota*, *supra*, pág. 733.

En *Otero v. Toyota*, *supra*, nos expresamos sobre la evaluación que debe recibir la prueba de referencia dentro del principio rector de evidencia sustancial. Allí, citando con aprobación el precedente federal de *Richardson v. Perales*, 402 U.S. 389 (1971) señalamos que:

> [u]na agencia puede descansar su determinación sólo en prueba de referencia, aún cuando ésta sea contradicha por prueba, si la prueba de

referencia es del tipo que un hombre prudente y razonable descansa en ella para llevar a cabo sus negocios. *Otero v. Toyota*, *supra*, pág. 734.[33]

Si bien es cierto que las declaraciones de la señora Cordero Rodríguez, contenidas en las transcripciones ofrecidas por la recurrida, eran prueba de referencia, el Oficial Examinador no solamente podía admitirlas por tratarse de un proceso administrativo, sino que podía descansar en ellas para hacer su determinación. Véase, *Otero v. Toyota*, *supra*, pág. 734. Además, las declaraciones de la señora Cordero Rodríguez fueron hechas en unas vistas ante la Asamblea Legislativa bajo juramento. Véase, Apéndice de la Petición de *Certiorari*, pág. 383.

En el caso de autos, el Oficial Examinador escuchó el testimonio de la recurrida en la vista informal. A su vez, tuvo ante sí las declaraciones que hizo la recurrida y la señora Cordero Rodríguez ante la Asamblea Legislativa. En ese sentido, pudo aquilatar en igualdad de condiciones

---

[33] Véanse: *Bailey v. Ark. State Bd. of Collection Agencies*, 373 Ark. 222, 226 (2008); *Colorado Dep´t of Revenue, Motor Vehicle Div. v. Kirke*, *supra*, pág. 21 ("the use of only hearsay evidence to establish a revocation element does not deny the licensee due process, as long as the hearsay is sufficiently reliable and trustworthy, and as long as the evidence possesses probative value commonly accepted by reasonable and prudent persons in the conduct of their affairs"); *School Comm. V. Massachusetts Comm´n Against Discrimination*, 423 Mass. 7, 15 (1996)("In administrative proceedings, hearsay evidence can be received and may constitute substantial evidence if it contains sufficient indicia of reliability and probative value"); *State v. Wright*, 456 N.W.2d 661, 665 (Iowa 1990); *In re Kennedy*, 472 A.2d 1317, 1329 (Del 1984)("The Due Process clause has never been read to mean that the admission of hearsay evidence in an administrative type proceeding is a violation of that clause, and we decline to accept that reading today").

ambas versiones. Al hacerlo, no le merecieron credibilidad las declaraciones de la recurrida.

A la luz de lo anterior, entendemos que las determinaciones de hecho que hizo el Oficial Examinador están basadas en prueba relevante que una mente razonada podría entender adecuada para sostener una conclusión. Es decir, las determinaciones están sostenidas en evidencia sustancial.

**V**

Por todo lo antes expresado resolvemos que no erró el Departamento de Justicia al denegarle los beneficios de representación legal a la recurrida. En consecuencia, se revoca la Sentencia emitida por el Tribunal de Apelaciones y se le ordena a la recurrida reembolsarle al Departamento de Justicia los gastos, costas y honorarios de abogado en que incurrió al proveerle, de forma preliminar, los beneficios de representación legal en el pleito federal. A tales efectos, el Departamento de Justicia deberá acreditarle a la recurrida el monto de los gastos incurridos por esos conceptos.

Se dictará Sentencia de conformidad.


                                    Mildred G. Pabón Charneco
                                        Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Adaline Torres Santiago

Recurrida

v.

Departamento de Justicia, por
Conducto del Secretario de
Justicia, Hon. Antonio
Sagardía

Peticionarios

*Certiorari*

CC-2009-0696

SENTENCIA

En San Juan, Puerto Rico, a 25 de mayo de 2011.

Por todo lo antes expresado resolvemos que no erró el Departamento de Justicia al denegarle los beneficios de representación legal a la recurrida. En consecuencia, se revoca la Sentencia emitida por el Tribunal de Apelaciones y se le ordena a la recurrida reembolsarle al Departamento de Justicia los gastos, costas y honorarios de abogado en que incurrió al proveerle, de forma preliminar, los beneficios de representación legal en el pleito federal. A tales efectos, el Departamento de Justicia deberá acreditarle a la recurrida el monto de los gastos incurridos por esos conceptos.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta concurre sin opinión escrita. La Juez Asociada señora Rodríguez Rodríguez no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo